STROUD, Judge.
 

 *519
 
 Kevin S. Lasecki ("plaintiff") appeals from an order in which the trial court ordered specific performance of his prospective support obligations under a separation agreement, requiring that he pay $2,900.00 monthly in child support, $1,385.00 monthly in alimony, and $9,592.50 in attorneys' fees. The trial court also entered money judgments of $54,432.31 for child support and alimony arrearages and $16,623.45 for an unpaid joint credit card debt. Plaintiff argues that (1) the trial court erred in awarding the two money judgments; (2) the trial court erred in ordering specific performance of $2,900.00 monthly in child support; (3) competent evidence does not support the trial court's findings as to the children's reasonable needs; (4) the trial court erred in ordering specific performance of $1,385.00 monthly in alimony; and (5) the trial court erred in awarding $9,592.50 in attorneys' fees. We affirm in part, vacate in part, and remand.
 

 I. Background
 

 Plaintiff and Stacey M. Lasecki ("defendant") married in 1993, and three children were born to the marriage. On 24 August 2012, plaintiff and defendant separated and executed a Separation Agreement, which resolved issues of child custody, equitable distribution, child support, alimony, and attorneys' fees. In the Separation Agreement, the parties agreed that plaintiff would pay defendant $2,900.00 per month in child support and $3,600.00 per month in alimony. The parties also agreed that plaintiff would pay a joint credit card debt. The parties further agreed that in the event that either party breached the Separation Agreement, that party would be liable for the other party's attorneys' fees.
 

 On 1 August 2013, plaintiff filed a complaint alleging that his income had significantly decreased since the Separation Agreement's execution and requested that the trial court issue an order setting his child support obligation pursuant to the North Carolina Child Support Guidelines. On
 
 *520
 
 19 September 2013, defendant answered and counterclaimed for specific performance of plaintiff's child support and alimony obligations under the Separation Agreement. Defendant also sought specific performance of payment of child support and alimony arrearages, payment of the unpaid joint credit card debt, attorneys' fees, and "such other and further relief as to the court may seem just, fit and proper."
 

 On 1 May 2014, plaintiff's employer terminated his employment. On 17 and 18 July 2014, while plaintiff was still unemployed and seeking a new job, the trial court held a hearing on the pending claims. On or about 21 July 2014, Frontline Products, LLC ("Frontline") offered plaintiff a job in Arizona, which plaintiff immediately accepted. On 23 July 2014, plaintiff moved to reopen the case to allow additional testimony regarding his new employment and income. On 14 August 2014, the trial court denied plaintiff's motion. On 28 August 2014, the trial court entered an order concluding that the $2,900.00 monthly child support amount set forth in the Separation Agreement was reasonable and that plaintiff was able to pay the full $2,900.00 monthly amount in child support and a reduced amount of $1,385.00 monthly in alimony. The trial court ordered as specific performance that plaintiff pay
 
 *290
 
 these monthly amounts as well as $9,592.50 for defendant's attorneys' fees and awarded money judgments of $54,432.31 for the child support and alimony arrearages and $16,623.45 for the unpaid joint credit card debt.
 

 On 3 September 2014, plaintiff moved for a new trial arguing that the trial court should consider his new employment and income and that it erred in imputing to him an annual income of $150,000.00. On 10 September 2014, the trial court denied plaintiff's motion. On 23 September 2014, plaintiff gave timely notice of appeal from the trial court's 28 August 2014 order.
 

 II. Child Support and Alimony Arrearages and Joint Credit Card Debt
 

 Plaintiff first argues that the trial court erred in granting defendant two money judgments in its order: (1) $54,432.31 in damages for the child support and alimony arrearages; and (2) $16,623.45 in damages for failure to pay the unpaid joint credit card debt pursuant to the Separation Agreement. Relying exclusively on
 
 NCNB v. Carter,
 
 plaintiff contends that the trial court erred in awarding these money judgments, because in her pleadings, defendant requested only specific performance of these unpaid amounts.
 
 See NCNB v.
 

 Carter,
 

 71 N.C.App. 118
 
 , 121-23,
 
 322 S.E.2d 180
 
 , 183-84 (1984). We distinguish
 
 Carter.
 

 In
 
 Carter,
 
 the defendants appealed from the trial court's ruling denying their post-verdict motion for treble damages and attorneys' fees
 
 *521
 
 pursuant to the Unfair and Deceptive Trade Practices Act.
 
 Id.
 
 at 121,
 
 322 S.E.2d at
 
 183 ;
 
 see also
 
 N.C. Gen. Stat. ch. 75 (2013). This Court affirmed the trial court's ruling:
 

 [T]he relief granted must be consistent with the claims pleaded and embraced within the issues determined at trial, which presumably the opposing party had the opportunity to challenge. Simply put, the scope of a lawsuit is measured by the allegations of the pleadings and the evidence before the court and not by what is demanded. Hence, relief under [North Carolina Rule of Civil Procedure] 54(c) is always proper when it does not operate to the substantial prejudice of the opposing party. Such relief should, therefore, be denied when the relief demanded was not suggested or illuminated by the pleadings nor justified by the evidence adduced at trial.
 

 In the present case, neither the pleadings nor the evidence adduced at trial suggested that the defendants were proceeding on an unfair and deceptive trade practice claim. Defendants tried their case without reference to or reliance upon G.S. 75-1.1
 
 et seq.
 
 Similarly, [the plaintiff] defended its case solely as a defense to common law fraud, and it did not litigate or assert any defenses to an unfair and deceptive trade practice claim. To permit defendants to change legal theories after the trial and verdict would not only deprive [the plaintiff] of a jury determination on that claim, but would subject [the plaintiff] to liability on a claim which it had no opportunity to evaluate or defend. Unquestionably proof of fraud necessarily constitutes a violation of G.S. 75-1.1, and under ordinary circumstances defendants would be entitled automatically to treble the damages fixed by the jury. However, fundamental fairness and due process required that [the plaintiff] be illuminated as to the substantive theory under which defendants were proceeding and to the possibility of the extraordinary relief sought prior to defendant's post-verdict motion for treble damages.
 

 Carter,
 

 71 N.C.App. at 121-22
 
 ,
 
 322 S.E.2d at 183
 
 (citations, quotation marks, and brackets omitted). The defendants did not request or raise the issue of treble damages until after the verdict.
 
 See
 

 id.,
 

 322 S.E.2d at 183
 
 .
 

 *522
 
 In contrast, here, defendant specifically requested in her counterclaims that plaintiff pay the child support and alimony arrearages and the unpaid amount owed on the joint credit card. Although plaintiff requested an order for specific performance, she also requested "such other and further relief as to the court may seem just, fit and proper." In addition, at the hearing, defendant's counsel cross-examined plaintiff specifically on the issues of the child support and alimony arrearages and the unpaid amount owed on the joint credit card. By awarding these unpaid
 
 *291
 
 amounts as money judgments, the trial court did not grant relief which "was not suggested or illuminated by the pleadings nor justified by the evidence adduced at trial."
 
 See
 

 id.
 
 at 122,
 
 322 S.E.2d at
 
 183 ; N.C. Gen.Stat. § 1A-1, Rule 54(c) (2013) ("Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."). Accordingly, we hold that the trial court did not err in awarding these unpaid amounts as money judgments.
 

 III. Child Support
 

 Plaintiff argues that the trial court erred in ordering specific performance of the Separation Agreement's entire child support obligation. Plaintiff specifically contends that the trial court erroneously imputed income to plaintiff in determining the proper child support amount.
 

 A. Standard of Review
 

 In
 
 Pataky v. Pataky,
 
 this Court established the following test for determining the appropriate amount of child support where the parties have executed an unincorporated separation agreement:
 

 [I]n an initial determination of child support where the parties have executed an unincorporated separation agreement that includes provision for child support, the court should first apply a rebuttable presumption that the amount in the agreement is reasonable and, therefore, that application of the guidelines would be inappropriate. The court should determine the actual needs of the child at the time of the hearing, as compared to the provisions of the separation agreement. If the presumption of reasonableness is not rebutted, the court should enter an order in the separation agreement amount and make a finding that application of the guidelines would be inappropriate. If, however, the court determines by the greater weight of the evidence that the presumption of reasonableness afforded
 
 *523
 
 the separation agreement allowance has been rebutted,
 
 taking into account the needs of the children existing at the time of the hearing and considering the factors enumerated in the first sentence of G.S. § 50-13.4(c),
 
 the court then looks to the presumptive guidelines established through operation of G.S. § 50-13.4(c1) and the court may nonetheless deviate if, upon motion of either party or by the court
 
 sua sponte,
 
 it determines application of the guidelines would not meet or would exceed the needs of the child or would be otherwise unjust or inappropriate.
 

 Pataky v. Pataky,
 

 160 N.C.App. 289
 
 , 305,
 
 585 S.E.2d 404
 
 , 414-15 (2003) (emphasis added and quotation marks, footnote, and ellipsis omitted),
 
 aff'd per curiam,
 

 359 N.C. 65
 
 ,
 
 602 S.E.2d 360
 
 (2004). The first sentence of N.C. Gen.Stat. § 50-13.4(c) provides:
 

 Payments ordered for the support of a minor child shall be in such amount as to meet the reasonable needs of the child for health, education, and maintenance, having due regard to the estates,
 
 earnings,
 
 conditions, accustomed standard of living of the child and the parties, the child care and homemaker contributions of each party, and other facts of the particular case.
 

 N.C. Gen.Stat. § 50-13.4(c) (2013) (emphasis added).
 

 In conducting this two-part analysis, the trial court must make findings of fact and conclusions of law.
 
 Pataky,
 

 160 N.C.App. at 305-06
 
 ,
 
 585 S.E.2d at 415
 
 . "[F]indings of fact by the trial court supported by competent evidence are binding on the appellate courts even if the evidence would support a contrary finding. Conclusions of law are, however, entirely reviewable on appeal."
 
 Scott v. Scott,
 

 336 N.C. 284
 
 , 291,
 
 442 S.E.2d 493
 
 , 497 (1994) (citation omitted).
 

 B. Imputation of Income
 

 The trial court may impute income to a party only upon finding that the party has "deliberately depressed his income or deliberately acted in disregard of his obligation to provide support":
 

 Generally, a party's ability to pay child support is determined by that party's actual income at the time the award is made. A party's capacity to earn may, however, be the basis for an award where the party
 
 *292
 
 deliberately depressed his income or deliberately acted in disregard of his obligation to provide support.
 
 *524
 
 Before earning capacity may be used as the basis of an award, there must be a showing that the actions reducing the party's income were taken in bad faith to avoid family responsibilities. Yet, this showing may be met by a sufficient degree of indifference to the needs of a parent's children.
 

 McKyer v. McKyer,
 

 179 N.C.App. 132
 
 , 146,
 
 632 S.E.2d 828
 
 , 836 (2006) (citations and quotation marks omitted),
 
 disc. review denied,
 

 361 N.C. 356
 
 ,
 
 646 S.E.2d 115
 
 (2007) ;
 
 see also
 

 Pataky,
 

 160 N.C.App. at 306-08
 
 ,
 
 585 S.E.2d at 415-16
 
 (holding that the trial court had erroneously imputed the income that the defendant had made at his last job absent evidence of bad faith);
 
 Bowers v. Bowers,
 

 141 N.C.App. 729
 
 , 732,
 
 541 S.E.2d 508
 
 , 510 (2001). In addition, in order to award the remedy of specific performance, the trial court generally must find that that "such relief is feasible":
 

 As a general proposition, the equitable remedy of specific performance may not be ordered unless such relief is feasible; therefore courts may not order specific performance where it does not appear that defendant can perform. In the absence of a finding that the defendant is able to perform a separation agreement, the trial court may nonetheless order specific performance if it can find that the defendant has deliberately depressed his income or dissipated his resources.
 

 In finding that the defendant is able to perform a separation agreement, the trial court is not required to make a specific finding of the defendant's "present ability to comply" as that phrase is used in the context of civil contempt. In other words, the trial court is not required to find that the defendant possesses some amount of cash, or asset readily converted to cash[,] prior to ordering specific performance.
 

 Condellone v. Condellone,
 

 129 N.C.App. 675
 
 , 682-83,
 
 501 S.E.2d 690
 
 , 695-96 (citations, quotation marks, and brackets omitted),
 
 disc. review denied,
 

 349 N.C. 354
 
 ,
 
 517 S.E.2d 889
 
 (1998).
 

 In sum, where the parties have executed an unincorporated separation agreement, the trial court must examine whether the presumption of reasonableness afforded the separation agreement has been rebutted, "taking into account the needs of the children existing at the time of the hearing and considering the factors enumerated in the first sentence of
 
 *525
 
 G.S. § 50-13.4(c) [.]"
 
 Pataky,
 

 160 N.C.App. at 305
 
 ,
 
 585 S.E.2d at 415
 
 . If the trial court concludes that the parties have not rebutted this presumption, the trial court should then determine to what extent the supporting parent "is able to perform" under the agreement.
 
 Condellone,
 

 129 N.C.App. at 682-83
 
 ,
 
 501 S.E.2d at 695-96
 
 . The trial court may then order specific performance and require the supporting parent to pay that amount.
 
 See
 

 id.,
 

 501 S.E.2d at 695-96
 
 . But the trial court may not impute income to the supporting parent absent a finding that the supporting parent "deliberately depressed his income or deliberately acted in disregard of his obligation to provide support."
 
 McKyer,
 

 179 N.C.App. at 146
 
 ,
 
 632 S.E.2d at 836
 
 (citation omitted);
 
 see also
 

 Pataky,
 

 160 N.C.App. at 306-07
 
 ,
 
 585 S.E.2d at
 
 415-16 ;
 
 Bowers,
 

 141 N.C.App. at 732
 
 ,
 
 541 S.E.2d at 510
 
 .
 

 The trial court based its conclusion of law that the $2,900.00 monthly amount set forth in the Separation Agreement was reasonable on numerous detailed findings of fact:
 

 7. Plaintiff remarried approximately two weeks before the hearing and lives with his Wife. His Wife is employed at Granger Corporation.
 

 8. The [plaintiff] and his current Wife live in a 4 bedroom, 2.5 bath home in Morrison Plantation. The home is rented for $1,650.00 per month and Plaintiff's Wife pays the entire rent. The home is currently occupied by Plaintiff, Plaintiff's Wife, and her two children in addition to his three children when they visit. He desires more time with his children, closer to fifty percent (50%). The three children attend public school and those schools are close to Plaintiff's home.
 

 9. Since the date of separation the Plaintiff has never been in town enough to exercise his 15 nights per month, until his
 
 *293
 
 recent unemployment. When employed, he generally visited every other weekend. His attempt to name the children's schools at trial was inaccurate. He exercised a week of visitation in July and took the children to the beach for his wedding.
 

 10. During the marriage and after the date of separation the Defendant has been the primary caretaker for the minor children. During the marriage Plaintiff travelled extensively, while Defendant generally stayed home with the children. Near the date of separation, Defendant held a part-time job of approximately 8 hours per week.
 

 *526
 
 ....
 

 13. At the time the parties entered into the Separation Agreement the Plaintiff travelled with his work 75% to 80% of the time. He was employed with Bath Solutions, Inc. and was employed with that company for approximately 4 years. Prior to that employment, Plaintiff was employed with another company in sales for approximately 19 years. That company was named Dial and later Henkle. Plaintiff's job was also in sales and at the end of his career with that company he was earning $150,000.00 per year.
 

 14. Pursuant to the Separation Agreement paragraph 16(e) the Plaintiff received an IRA with Davidson Wealth Management in the amount of $185,000.00 and he has maintained that asset, although he has taken some distributions since the division of property. Even after the distributions, the account has a current balance of approximately $180,000.00. He received two boats pursuant to the Separation Agreement and has sold both of them. A few months after the date of separation he received net proceeds of $2,000.00 for one of them and recently received $13,600.00 for the other.
 

 15. On May 13, 2013, the [plaintiff] lost his job with BSI due to soft sales and the companies' hiring of a family member. Within one week he found a job with Phoenix Sales and Distribution. Although his travel was cut significantly, Plaintiff continued to travel frequently with his employment. His annual income with this employment was $160,000.00. In August 2013 Plaintiff was offered a position in sales with Frontline with an annual salary of $255,000.00. Plaintiff asked Defendant and the children to move to Arizona but she declined. Because he did not wish to move away from his children, he declined the position. In January 2014 Plaintiff's salary was cut with Phoenix Sales to $80,000.00. Plaintiff was terminated from Phoenix Sales on May 1, 2014. He continued to cover the children on his health insurance through a COBRA plan at a cost of $580.00 per month. As of the date of trial, the Plaintiff learned that he could add his children to a policy at his Wife's employment for an additional $250.00 per month. Plaintiff has applied for unemployment [benefits] but has yet to receive benefits. The expected benefits would be
 
 *527
 
 $350.00 per week. Plaintiff has looked for employment through friends in the industry. He has contacted his previous employer, Henkle/Dial. He has also contacted Frontline and is hopeful that he can secure a position with that company. This job prospect is favorable and he has again asked Defendant to move with the children to Arizona. Defendant does not intend to move to Arizona.
 

 16. In 2013 the parties were offered an early pension distribution from Henkle also known as Dial, a former employer of the Plaintiff. This pension had been divided by a QDRO pursuant to paragraph 16(h) of the Separation Agreement. Plaintiff accepted the offer and received $46,636.99. Defendant did not accept the offer and retains her interest in the pension plan.
 

 17. The Defendant and the minor children lived in the marital home until it was sold by short sale in July of 2013.
 

 18. When Plaintiff was employed he was paid every two weeks. He did not comply with his obligations under the Separation Agreement. He did send to Defendant [one half] of his net pay 2 times per month. The two extra pay checks Plaintiff received per year he kept for himself.
 

 ....
 

 *294
 
 22. In 2013 the Plaintiff had the following deposit accounts:
 

 Account
 

 Balance 1/1/13
 

 Balance 11/12/13
 

 [Checking account]
 

 $29,794.65
 

 $13,567.96
 

 IRA [account 1]
 

 $198,693.13
 

 $187,919.44
 

 IRA [account 2]
 

 $20,526.69
 

 $23,296.16
 

 Roth IRA [account]
 

 $3,886.75
 

 $4,262.35
 

 Total
 

 $252,901.22
 

 $229,045.91
 

 23. In Plaintiff's [checking account], he had an ending balance during the following months as outlined below:
 

 Date
 

 Ending Balance
 

 9/30/13
 

 $18,862.12
 

 10/23/13
 

 $15,165.52
 

 11/20/13
 

 $15,827.20
 

 12/20/13
 

 $12,889.85
 

 1/23/14
 

 $49,692.19
 

 2/20/14
 

 $35,864.01
 

 3/21/14
 

 $31,774.86
 

 *528
 
 The funds creating these balances included wages and early retirement distributions.
 

 24. Defendant is employed with Hawthorns Holding Group and Davidson Pizza Company. She serves as a manager for Davidson Pizza Company and completes tasks associated with accounts payable with Hawthorns Holding Group. She earns $12.00 [per hour] and works approximately 30 hours per week. She has had this employment since August 27, 2013.
 

 25. Defendant has taken three distributions from the IRA that she was distributed under the Separation Agreement. In 2013 she took $12,000.00 to $15,000.00 and in ... 2014 she has taken $9,600.00. Her original division under paragraph 16(e) [of the Separation Agreement] was approximately $162,000.00.
 

 26. In 2011 Plaintiff's wages, salaries and tips were $286,505.00; in 2012 $264,446.00; in 2013 $182,288.00 (in addition the Plaintiff took IRA distributions in the sum of $28,821.00 and a pension distribution in the sum of $46,637.00).
 

 27. Plaintiff's reasonable monthly expenses excluding his support obligations under the Separation Agreement living separate and apart from the Defendant can be found in the following table:
 

 Expense
 

 Amount
 

 Comment
 

 Rent
 

 $825.00
 

 [one half] current amount [because] shared with Wife who is employed
 

 Health Insurance
 

 $250.00
 

 Incremental addition to Wife's plan
 

 Food Expense
 

 $200.00
 

 Plaintiff's 6/12/14 Affidavit
 

 Truck Lease
 

 $615.00
 

 Car Insurance
 

 $150.00
 

 No boats remain
 

 Cell Phone
 

 $50.00
 

 Plaintiff's 6/2/14 Affidavit
 

 Uninsured Medical Expenses
 

 $75.00
 

 Plaintiff's 6/12/14 Affidavit
 

 Direct TV
 

 $75.00
 

 Electricity
 

 $135.00
 

 Life Insurance
 

 $230.00
 

 Gasoline
 

 $300.00
 

 Higher of Plaintiff's Affidavits
 

 Clothing and Household Goods
 

 $150.00
 

 Dog food/maintenance
 

 $50.00
 

 Lower of Plaintiff's Affidavits
 

 Internet Service
 

 $50.00
 

 Lower of Plaintiff's Affidavits
 

 Water
 

 $85.00
 

 Higher of Plaintiff's Affidavits
 

 Entertainment
 

 $300.00
 

 Lawn Maintenance
 

 $150.00
 

 TOTAL
 

 $3,690.00
 

 *295
 

 *529
 
 28. The parties presented little evidence regarding the past expenses or current actual needs of the minor children. The Separation Agreement reveals that each of the parties had an automobile at the date of separation and the parties had two boats. They had college savings plans for the two older children. They lived in a home which suffered the risk of foreclosure. Plaintiff communicates with the oldest daughter electronically. Within the Separation Agreement the parties agreed that the appropriate sum to be paid by Plaintiff to Defendant was $2,900.00 per month. The children attend public school. The Court is able to estimate some of the reasonable needs of the minor children by comparing them to the reasonable needs of the Plaintiff. The reasonable needs of the minor children living primarily with the Defendant can be found in the following table:
 

 Expense
 

 Amount
 

 Comment
 

 Rent
 

 $825.00
 

 [one half] of total similar fixe[d] expense of Plaintiff
 

 Health Insurance
 

 $0.00
 

 Provided by Plaintiff
 

 Food Expense
 

 $600.00
 

 3 x Plaintiff, assumes each teenage child eats as much as Plaintiff
 

 Truck Lease
 

 $615.00
 

 Assumes [one half] total fixed expense similar to Plaintiff plus a car for 17 [year] old child [one half] value of Plaintiff
 

 Car Insurance
 

 $225.00
 

 Assumes [one half] total fixed expense similar to Plaintiff plus a car for 17 [year] old child [one half] value of Plaintiff
 

 Cell Phone
 

 $100.00
 

 Each teenage (2) child with same cell phone as Plaintiff
 

 Uninsured Medical Expenses
 

 $225.00
 

 3 x Plaintiff
 

 Direct TV
 

 $37.50
 

 [one half] fixed expense of Plaintiff attributed to children
 

 Electricity
 

 $67.50
 

 [one half] fixed expense of Plaintiff attributed to children
 

 Gasoline
 

 $450.00
 

 Assumes [one half] total fixed expense similar to Plaintiff plus a car for 17 [year] old child
 

 Clothing and Household Goods
 

 $450.00
 

 3 x Plaintiff
 

 Dog food/maintenance
 

 $25.00
 

 [one half] fixed expense of Plaintiff attributed to children
 

 Internet Service
 

 $25.00
 

 [one half] fixed expense of Plaintiff attributed to children
 

 Water
 

 $42.50
 

 [one half] fixed expense of Plaintiff attributed to children
 

 Entertainment
 

 $900.00
 

 3 x Plaintiff
 

 Lawn Maintenance
 

 $75.00
 

 [one half] fixed expense of Plaintiff attributed to children
 

 TOTAL
 

 $4,662.50
 

 *296
 

 *530
 
 29. The children have generally been covered by medical insurance throughout their lives by policies provided by Plaintiff's employer. The parties' estates can be found above. Each is now renting a home. Their primary assets appear to be retirement [accounts] divided pursuant to the Separation Agreement. Plaintiff has continued to contribute to retirement plans after the date of separation. The Plaintiff has enjoyed high earnings and the children enjoyed the benefit of his earnings throughout the marriage and most of the separation. His payments to Defendant under the Separation Agreement can be found above. The accustomed standard of living of the parties
 
 *531
 
 and the children were high prior to the separation of the parties and it has been comfortable since the separation. Defendant contributed as a homemaker during the marriage.
 
 Plaintiff's lowest salary was $80,000.00 just prior to
 

 *297
 

 his recent termination. Defendant is currently earning as much as she has since the date of separation, $18,720.00. It would therefore be reasonable for Plaintiff to provide for not less than 81% of the needs of the minor children.
 

 [1]
 
 Pursuant to the Separation Agreement the Plaintiff [must] pay the Defendant $2,900.00 per month. Eighty-one percent of the reasonable needs found above are over $3,776.62 per month.
 
 Considering these factors, [t]he Court cannot find that the amount of support provided for in the parties' Agreement is unreasonable.
 

 (Emphasis added.) The trial court concluded that plaintiff had failed to rebut the
 
 Pataky
 
 presumption and thus ordered that he pay $2,900.00 per month in child support in accordance with the Separation Agreement, as described in the following conclusions of law:
 

 3. The legal obligation of married parents to support a minor child may be [e]stablished through execution and acknowledgement of a written Separation Agreement. No Agreement between the parents can fully deprive the Courts of their authority to protect the best interests of minor children. Either party to an unincorporated Separation Agreement may seek a Court Order to establish child support pursuant to N.C.G.S. [§ ] 50-13.4 in an amount, scope or duration different from that provided in the unincorporated Agreement. When a valid, unincorporated Separation Agreement determines a parent's child support obligations, in a subsequent action for child support, the court must base the parent's prospective child support obligation on the amount of support provided under the Separation Agreement rather than the amount of support payable under the child support guidelines unless the Court [d]etermines, by the greater weight of the evidence, taking into account the child's needs and factors
 
 *532
 
 enumerated in the first ... sentence of N.C.G.S. [§ ] 50-13.4(c), that the amount of support under the Separation Agreement is unreasonable.
 
 Taking into account the children's needs and factors enumerated in the first sentence of N.C.G.S. [§ ] 50-13.4(c) [,] the parties have failed to prove that the amount of support under the Separation Agreement is unreasonable and the Plaintiff should pay Defendant child support in the amount of $2,900.00 per month.
 

 4.
 
 The Court is not finding that Plaintiff is voluntarily suppressing his income in a bad faith attempt to avoid his child support obligation. The Court is not imputing income to the Plaintiff. The Court is setting child support pursuant to [N.C. Gen.Stat. § ] 50-13.4(c) and pursuant to those factors which include the needs of the children, the estate and earnings of Plaintiff and the presumption created by the Separation Agreement.
 

 (Emphasis added.)
 

 In Finding of Fact 30, the trial court next examined plaintiff's current ability to comply with his contractual obligations under the Separation Agreement in determining what amounts of child support and alimony to order as specific performance:
 

 Plaintiff was regularly employed during the marriage earning $150,000.00. At and after the date of separation he was earning significantly more. At times during his four years with BSI he earned well in excess of $200,000.00 per year. Within a week of his severance he found a job earning $160,000.00 per year. While holding that job he turned down an offer of $255,000.00 per year and has a good prospect with a job with that employer. It is feasible for Plaintiff to earn $150,000.00 and with those earnings to support Defendant and their children.
 
 Based upon his experience, contacts in the industry and prior job performance[,] he has the ability to quickly find employment earning at least $150,000.00 per year.
 

 [2]
 

 Earning
 

 *298
 

 $150,000. 00
 

 *533
 

 annually is $12,500.00 per month.
 
 The following table outlines the Plaintiff's current ability to comply with his contractual obligations under the Separation Agreement.
 

 Item
 

 Amount
 

 Comments
 

 Likely potential gross income
 

 $12,500.00
 

 Federal Tax obligation
 

 ($2,878.71)
 

 IRS Publication 15
 

 Social Security and Medicare
 

 ($956.25)
 

 .0765
 

 North Carolina Income Tax
 

 ($688.75)
 

 Publication NC-30
 

 Plaintiff's reasonable expenses
 

 ($3,690.00)
 

 See above
 

 Plaintiff's child support obligation
 

 ($2,900.00)
 

 As ordered herein
 

 Total Remaining
 

 $1,386.29
 

 (Emphasis added.)
 

 In determining what amounts of child support and alimony to order as specific performance, as a practical matter, the trial court imputed $150,000.00 in annual income to plaintiff despite its statement that "[t]he Court is not imputing income to the Plaintiff." It is undisputed that as of the date of trial, plaintiff was unemployed and had no income. The trial court concluded that plaintiff was unable to "comply with an order requiring specific performance of a payment of all of the remaining damages suffered by Defendant due to Plaintiff's breach of the [Separation] Agreement." Accordingly, the trial court ordered as specific performance that plaintiff pay $2,900.00 per month in child support and $1,385.00 per month in alimony, or $1,386.29 rounded down, rather than the full $3,600.00 monthly alimony amount, as set forth in the Separation Agreement.
 

 On 3 September 2014, plaintiff moved for a new trial on the following two grounds: (1) "Newly discovered evidence based upon the Plaintiff having received a job offer which he has accepted and which will involve his moving to Arizona"; and (2) "Insufficiency of evidence to justify the verdict and the verdict is contrary to law in that the evidence presented did not justify the Court basing its verdict upon finding that the Plaintiff had the present capacity to earn $150,000 per year." On 10 September 2014, the trial court denied plaintiff's motion, noting the following:
 

 Since the court found that the presumption established by the agreement of the parties was not rebutted[,] the court never considered the North Carolina Child Support Guidelines.
 
 Since the court did not use the
 

 *534
 

 Child Support Guidelines to establish [plaintiff's] obligation to pay child support [,] the court did not improperly use plaintiff's earning capacity or imputed income to establish child support.
 
 The court considered his earnings of 0, but also considered all of the other factors outlined in N.C.G.S. [§ ] 50-13.4(c) and the needs of the children at the time of the hearing and the parties' unincorporated agreement.
 

 (Emphasis added.)
 

 It appears that the trial court divided its child support analysis into two parts: (1) whether plaintiff rebutted the
 
 Pataky
 
 presumption; and (2) what amount of child support plaintiff was "able to perform[.]"
 
 See
 

 Pataky,
 

 160 N.C.App. at 305
 
 ,
 
 585 S.E.2d at
 
 414-15 ;
 

 *299
 

 Condellone,
 

 129 N.C.App. at 682-83
 
 ,
 
 501 S.E.2d at 695-96
 
 . The trial court ostensibly declined to impute income to plaintiff during the first part of its analysis, yet it did impute an annual income of $150,000.00 to plaintiff during the second part of its analysis even though it found that plaintiff was not "voluntarily suppressing his income in a bad faith attempt to avoid his child support obligation."
 

 But nothing in
 
 McKyer, Pataky
 
 , or
 
 Bowers
 
 suggests that the rule that the trial court cannot impute income absent a finding of bad faith is limited to a particular part of the trial court's child support determination.
 
 See
 

 McKyer,
 

 179 N.C.App. at 146
 
 ,
 
 632 S.E.2d at 836
 
 ("Before earning capacity may be used as the basis of [a child support] award, there must be a showing that the actions reducing the party's income were taken in bad faith to avoid family responsibilities.");
 
 Pataky,
 

 160 N.C.App. at 306-07
 
 ,
 
 585 S.E.2d at
 
 415-16 ;
 
 Bowers,
 

 141 N.C.App. at 732
 
 ,
 
 541 S.E.2d at 510
 
 . Rather, we hold that this rule applies throughout the entire child support determination.
 

 We find it especially instructive that this Court in
 
 Pataky,
 
 even after it had held that the trial court had erred in failing to apply a presumption of reasonableness to the parties' separation agreement, decided to address the issue of imputation of income and held that the trial court had erred in imputing income to the supporting parent absent evidence of bad faith.
 
 See
 

 Pataky,
 

 160 N.C.App. at 306-08
 
 ,
 
 585 S.E.2d at 415-16
 
 . In its discussion, this Court did not suggest that this rule would be inapplicable should the trial court on remand determine that the separation agreement amount was reasonable.
 
 See
 

 id.,
 

 585 S.E.2d at 415-16
 
 . Accordingly, we hold that the trial court erred in basing its child support award upon plaintiff's earning capacity when it had found that plaintiff
 
 *535
 
 was
 
 not
 
 " voluntarily suppressing his income in a bad faith attempt to avoid his child support obligation."
 
 See
 

 id.
 
 at 306-07,
 
 585 S.E.2d at
 
 415-16 ;
 
 McKyer,
 

 179 N.C.App. at 146
 
 ,
 
 632 S.E.2d at
 
 836 ;
 
 Bowers,
 

 141 N.C.App. at 732
 
 ,
 
 541 S.E.2d at 510
 
 .
 

 Defendant emphasizes that the trial court did not violate the rule in
 
 Condellone
 
 that "[i]n the absence of a finding that the [supporting parent] is able to perform a separation agreement, the trial court may nonetheless order specific performance if it can find that the [supporting parent] 'has deliberately depressed his income or dissipated his resources.' "
 
 See
 

 Condellone,
 

 129 N.C.App. at 682
 
 ,
 
 501 S.E.2d at 695-96
 
 (quoting
 
 Cavenaugh v. Cavenaugh,
 

 317 N.C. 652
 
 , 658,
 
 347 S.E.2d 19
 
 , 23 (1986) ). Defendant argues that the trial court did not need to find that plaintiff had deliberately depressed his income or dissipated his resources, because it did not order him to pay more than it found that he had the ability to pay. Although we agree that the trial court did not violate this particular rule in
 
 Condellone
 
 for the reason defendant gives, we note that nothing in
 
 Condellone
 
 or
 
 Cavenaugh
 
 vitiates the related yet distinct rule that in determining child support, the trial court cannot impute income absent a finding of bad faith, as held in
 
 McKyer, Pataky
 
 , and
 
 Bowers. Compare
 

 Condellone,
 

 129 N.C.App. at 682-83
 
 ,
 
 501 S.E.2d at 695-96
 
 ,
 
 and
 

 Cavenaugh,
 

 317 N.C. at 658
 
 ,
 
 347 S.E.2d at 23
 
 ,
 
 with
 

 McKyer,
 

 179 N.C.App. at 146
 
 ,
 
 632 S.E.2d at 836
 
 ,
 
 Pataky,
 

 160 N.C.App. at 306-07
 
 ,
 
 585 S.E.2d at 415-16
 
 ,
 
 and
 

 Bowers,
 

 141 N.C.App. at 732
 
 ,
 
 541 S.E.2d at 510
 
 . In fact, our Supreme Court in
 
 Cavenaugh
 
 cited to
 
 Quick v. Quick
 
 for the companion rule to the
 
 McKyer
 
 rule that in determining the proper amount of
 
 alimony,
 
 the trial court cannot impute income absent a finding of bad faith.
 
 See
 

 Cavenaugh,
 

 317 N.C. at 657
 
 ,
 
 347 S.E.2d at 23
 
 ("
 
 Cf.
 

 Quick v. Quick,
 

 305 N.C. 446
 
 ,
 
 290 S.E.2d 653
 
 (1982) (if supporting spouse deliberately depresses income or dissipates resources, then capacity to earn rather than actual income may be the basis for an alimony award)."). In
 
 Quick,
 
 our Supreme Court stated this rule more strongly:
 

 [T]here are no findings to indicate whether the trial court believed that defendant was deliberately depressing his income or whether he was indulging in excessive spending in disregard of his marital obligation to support his dependent spouse.
 
 Absent those factors, our law requires that the ability of defendant to pay alimony is ordinarily determined by his income at the time the award is made.
 

 *300
 

 Quick,
 

 305 N.C. at 456-57
 
 ,
 
 290 S.E.2d at 660
 
 (emphasis added). Therefore, because the trial court based its child support award on plaintiff's
 
 *536
 
 earning capacity, we vacate that portion of the trial court's order and remand the case to the trial court for further proceedings.
 

 We also note that on or about 21 July 2014, only three days after the close of the 17 and 18 July 2014 hearing, Frontline extended an offer to plaintiff to work as a salesman in Arizona, and plaintiff immediately accepted. The salary in Frontline's offer was one percent of all of plaintiff's sales, with a yearly guaranteed draw of $110,000.00. The trial court had taken the case under advisement at the close of the hearing on 18 July 2014 and had not yet announced a ruling. On 23 July 2014, plaintiff moved to reopen the case to allow testimony regarding this new employment and income, and although the trial court had still not entered an order, on 14 August 2014, the trial court denied plaintiff's motion. On 28 August 2014, the trial court entered the order which is on appeal, and on 3 September 2014, plaintiff moved for a new trial, again seeking to present evidence of plaintiff's actual income in his new job; the trial court denied this motion as well. Although plaintiff did not appeal from the orders on the post-trial motions and has not challenged them on appeal, we cannot help but note that if the trial court had allowed the evidence of plaintiff's actual income in his new job to be presented and considered, most of the issues addressed by this appeal would have been eliminated and there would have been no need for remand on those issues. Plaintiff accepted the new job only days after the hearing and even before the trial court had announced its rulings, and with newly available income information, the order could have been based upon plaintiff's actual income. We would also imagine that plaintiff's move to Arizona to begin the new employment would affect his visitation schedule with the children and travel costs associated with visitation, which are additional factors the trial court may need to consider when addressing the child support issue.
 

 Defendant argues that the fact that plaintiff got a new job with Frontline after the trial renders plaintiff's argument as to the trial court's imputation of income moot.
 
 See
 

 Ass'n for Home & Hospice Care of N.C., Inc. v. Div. of Med. Assistance,
 

 214 N.C.App. 522
 
 , 525,
 
 715 S.E.2d 285
 
 , 287-88 (2011) ("A case is 'moot' when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy.") (citation omitted). If plaintiff's new job with Frontline paid him an annual salary of $150,000.00, the amount imputed by the trial court, there may have been no practical reason for plaintiff to raise this argument on appeal, although it still may not really be legally moot. But we do not know exactly what plaintiff's new salary is since the amount is based on his sales, with a yearly guaranteed minimum
 
 *537
 
 of $110,000.00; his actual income could be substantially more depending upon sales, or it could be up to $40,000.00 annually less than the $150,000.00 used by the trial court. In addition, there may be changes to visitation and travel expenses for visitation associated with plaintiff's move to Arizona. Accordingly, this issue did not become moot because plaintiff accepted the job with Frontline.
 

 C. Evidence of Children's Reasonable Needs
 

 Plaintiff next argues that competent evidence does not support the trial court's findings as to the children's reasonable needs. Although we are vacating the portion of the trial court's order awarding $2,900.00 per month in child support because the trial court's determination was based upon imputation of income to plaintiff, we address this issue as it likely to arise on remand.
 

 In determining whether the child support amount in a separation agreement is reasonable, the trial court "should determine the actual needs of the child at the time of the hearing, as compared to the provisions of the separation agreement."
 
 Pataky,
 

 160 N.C.App. at 305
 
 ,
 
 585 S.E.2d at 414
 
 . "In order to determine the reasonable needs of the child, the trial court must hear evidence and make findings of specific fact on the child's actual past expenditures and present reasonable expenses."
 
 Atwell v. Atwell,
 

 74 N.C.App. 231
 
 , 236,
 
 328 S.E.2d 47
 
 , 50 (1985).
 

 *301
 
 In
 
 Atwell,
 
 this Court vacated a child support award because the trial court had failed to make a finding as to the actual past expenditures of the child and the evidence did not support its finding as to the present reasonable expenses of the child:
 

 The record is devoid of any finding relating to the actual past expenditures of the minor child. Although there is a finding ostensibly relating to the present reasonable expenses of the child,
 
 i.e.,
 
 that the wife's needs for "maintenance" of the child are "no less than $500.00 per month," this finding is not supported by the evidence. The wife's affidavit sets the child's individual monthly needs at $308.63. There is no other evidence regarding the child's individual financial needs. Perhaps the trial court was estimating what portion of the fixed household expenses was attributable to the child. However, as discussed, there is no evidence apportioning the expenses, and factual findings must be supported by evidence, and not based on speculation.
 

 *538
 

 Id.
 
 at 236-37,
 
 328 S.E.2d at 50-51
 
 . Similarly, in
 
 Loosvelt,
 
 this Court held that the trial court erred when it partially based its determination of the children's reasonable needs upon the supporting parent's "shared family expenses":
 

 The trial court's order seems to "divide the father's wealth" by basing child support upon a number calculated by adding one-third of plaintiff's "shared family expenses" to the child's historical individual expenses. The order also finds that plaintiff resided in Los Angeles, California, but fails to make any findings of fact as to how plaintiff's expenses incurred in California, which apparently do not include any child-related expenditures, relate to the expenses of raising a child, even the child of a wealthy parent, in Charlotte, North Carolina.
 

 Loosvelt v. Brown,
 

 235 N.C.App. 88
 
 , 106,
 
 760 S.E.2d 351
 
 , 362 (2014) (citation omitted).
 

 Like in
 
 Loosvelt,
 
 in Finding of Fact 28, as quoted above, the trial court estimated the children's reasonable needs "by comparing them to the reasonable needs" of plaintiff and indicated in its table that it was basing its estimations of the children's expenses upon assumptions related to plaintiff's expenses, not upon any competent evidence as to the children.
 
 See
 

 id.,
 

 760 S.E.2d at 362
 
 . Plaintiff argues that this "calculation of the present reasonable needs of the children based on [p]laintiff's expenses is speculation[,]" especially given the trial court's finding that the children live primarily with defendant, not plaintiff. We agree and direct the trial court on remand to "hear evidence and make findings of specific fact on the [children's] actual past expenditures and present reasonable expenses."
 
 See
 

 Atwell,
 

 74 N.C.App. at 236
 
 ,
 
 328 S.E.2d at 50
 
 .
 

 IV. Alimony
 

 A. Standard of Review
 

 Plaintiff next argues that the trial court erred in ordering specific performance of $1,385.00 monthly in alimony because it erred in imputing income to him as part of its determination that it was feasible for him to pay this amount in alimony. "[F]indings of fact by the trial court supported by competent evidence are binding on the appellate courts even if the evidence would support a contrary finding. Conclusions of law are, however, entirely reviewable on appeal."
 
 Scott,
 

 336 N.C. at 291
 
 ,
 
 442 S.E.2d at 497
 
 (citation omitted). "The remedy [of specific performance] rests in the sound discretion of the trial court[ ] and is conclusive on
 
 *539
 
 appeal absent a showing of a palpable abuse of discretion."
 
 Harborgate Prop. Owners Ass'n v. Mountain Lake Shores Dev. Corp.,
 

 145 N.C.App. 290
 
 , 295,
 
 551 S.E.2d 207
 
 , 210 (2001) (citation omitted),
 
 appeal dismissed and disc. review denied,
 

 356 N.C. 301
 
 ,
 
 570 S.E.2d 505
 
 , 507 (2002).
 

 B. Analysis
 

 Like in the context of child support, as discussed above, when establishing an alimony obligation, the trial court may not impute income to the supporting spouse unless it finds that "the supporting spouse is deliberately depressing his or her income or indulging in excessive spending because of a disregard of the marital obligation to provide support for the dependent spouse":
 

 *302
 
 Consideration must be given to the needs of the dependent spouse, but the estates and earnings of both spouses must be considered. It is a question of fairness and justice to all parties.
 
 Unless the supporting spouse is deliberately depressing his or her income or indulging in excessive spending because of a disregard of the marital obligation to provide support for the dependent spouse, the ability of the supporting spouse to pay is ordinarily determined by his or her income at the time the award is made.
 
 If the supporting spouse is deliberately depressing income or engaged in excessive spending, then capacity to earn, instead of actual income, may be the basis of the award.
 

 ....
 

 [T]here are no findings to indicate whether the trial court believed that defendant was deliberately depressing his income or whether he was indulging in excessive spending in disregard of his marital obligation to support his dependent spouse.
 
 Absent those factors, our law requires that the ability of defendant to pay alimony is ordinarily determined by his income at the time the award is made.
 

 Quick,
 

 305 N.C. at 453-57
 
 ,
 
 290 S.E.2d at 658-60
 
 (emphasis added and citation and quotation marks omitted);
 
 see also
 

 Kowalick v. Kowalick,
 

 129 N.C.App. 781
 
 , 787,
 
 501 S.E.2d 671
 
 , 675 (1998) ("To base an alimony obligation on earning capacity rather than actual income, the trial court must first find that the party has depressed her income in bad faith."). Additionally, as discussed above, "the equitable remedy of specific performance may not be ordered unless such relief is feasible; therefore courts may not order specific performance where it does not appear that
 
 *540
 
 defendant can perform."
 
 Condellone,
 
 129 N.C.App. at 682, 501 S.E.2d at 695 (citation and quotation marks omitted).
 

 In Finding of Fact 30, as quoted above, the trial court imputed an annual income of $150,000.00 to plaintiff and concluded that plaintiff had the ability to pay $1,385.00 monthly in alimony in addition to his child support obligation. But the trial court found that plaintiff was
 
 not
 
 voluntarily suppressing his income. Absent a finding that plaintiff was "deliberately depressing his income" or "indulging in excessive spending in disregard of his marital obligation to support his dependent spouse[,]" "our law requires that the ability of [plaintiff] to pay alimony is ordinarily determined by his income at the time the award is made."
 
 See
 

 Quick,
 

 305 N.C. at 456-57
 
 ,
 
 290 S.E.2d at
 
 660 ;
 
 Kowalick,
 

 129 N.C.App. at 787
 
 , 501 S.E.2d at 675. Although the parties in
 
 Quick
 
 and
 
 Kowalick
 
 had not executed a separation agreement, those cases do not suggest that the court should treat the determination of ability to pay for purposes of specific performance of a separation agreement any differently.
 
 See
 

 Quick,
 

 305 N.C. at 453-57
 
 ,
 
 290 S.E.2d at
 
 658-60 ;
 
 Kowalick,
 

 129 N.C.App. at 787
 
 , 501 S.E.2d at 675. Accordingly, we hold that the trial court erred in imputing income to plaintiff in determining the proper amount of alimony and therefore vacate that portion of the order.
 

 V. Attorneys' Fees
 

 A. Standard of Review
 

 "[Q]uestions of contract interpretation are reviewed as a matter of law and the standard of review is
 
 de novo.
 
 "
 
 Price & Price Mech. of N.C., Inc. v. Miken Corp.,
 

 191 N.C.App. 177
 
 , 179,
 
 661 S.E.2d 775
 
 , 777 (2008). "The remedy [of specific performance] rests in the sound discretion of the trial court [ ] and is conclusive on appeal absent a showing of a palpable abuse of discretion."
 
 Harborgate Prop. Owners,
 

 145 N.C.App. at 295
 
 ,
 
 551 S.E.2d at 210
 
 (citation omitted).
 

 B. Analysis
 

 Plaintiff argues that the trial court erred in ordering specific performance of $9,592.50 in attorneys' fees. Plaintiff does not challenge the trial court's conclusion of law that defendant was
 
 entitled
 
 to attorneys' fees under the Separation Agreement; rather, plaintiff contends that the trial court erroneously imputed income to him in determining that it was "feasible" for him to pay this amount.
 
 See
 

 Condellone,
 

 129 N.C.App. at 682
 
 , 501 S.E.2d at 695 (citation omitted). Accordingly, we review this issue for an abuse of discretion.
 
 See
 

 Harborgate Prop.
 

 *303
 

 Owners,
 

 145 N.C.App. at 295
 
 ,
 
 551 S.E.2d at 210
 
 .
 

 *541
 
 "[T]he public policy of this State encourages settlement agreements and supports the inclusion of a provision for the recovery of attorney's fees in settlement agreements."
 
 Bromhal v. Stott,
 

 341 N.C. 702
 
 , 705,
 
 462 S.E.2d 219
 
 , 221 (1995). We revisit this Court's discussion in
 
 Condellone
 
 of the prerequisites of ordering specific performance of a separation agreement:
 

 As a general proposition, the equitable remedy of specific performance may not be ordered unless such relief is feasible; therefore courts may not order specific performance where it does not appear that defendant can perform. In the absence of a finding that the defendant is able to perform a separation agreement, the trial court may nonetheless order specific performance if it can find that the defendant has deliberately depressed his income or dissipated his resources.
 

 In finding that the defendant is able to perform a separation agreement, the trial court is not required to make a specific finding of the defendant's "present ability to comply" as that phrase is used in the context of civil contempt. In other words, the trial court is not required to find that the defendant possesses some amount of cash, or asset readily converted to cash[,] prior to ordering specific performance.
 

 Condellone,
 

 129 N.C.App. at 682-83
 
 ,
 
 501 S.E.2d at 695-96
 
 (citations, quotation marks, and brackets omitted).
 

 In the Separation Agreement, the parties agreed: "If either party breaches any of the provisions of this Agreement, then the breaching party shall be required to pay reasonable attorney fees for the party whose contractual rights hereunder were violated by said breach."
 

 The trial court made the following findings of fact and conclusions of law on this issue:
 

 31. Plaintiff has breached the Agreement. Defendant has incurred reasonable attorney fees in response to that breach. Pursuant to the Separation Agreement Defendant is entitled to recover these fees. Five attorneys have worked for the Defendant in this litigation.... In light of the rates charged in the area and the complexity of the work[,] the rates charged by the attorneys are reasonable. Some of the time was devoted to the divorce of the parties which was not necessitated by Plaintiff's breach.
 

 *542
 
 The following table contains the reasonable attorney fees incurred by Defendant related to Plaintiff's breach of the agreement.
 
 [3]
 

 ....
 

 32. Plaintiff has retained significant assets in the form of retirement savings which will make it difficult for Defendant to collect a money judgment. He rents his dwelling and leases his vehicle. While failing to comply with the terms of the contract he has chosen to buy jewelry for others, undertake the obligations of a new marriage and take vacations. He has continued since the date of separation to contribute to retirement savings plans in the sum of $231.00 per month according to his June 2, 2014 affidavit while refusing to perform under the contract. Excluding Defendant's claims for attorney fees, she is obtaining significant money judgments against the plaintiff as a result of this Order, which may also inhibit her ability to collect upon another judgment.
 
 In light of Plaintiff's maintenance of a large checking account balance[,] he has the ability to comply with an Order for the payment of Defendant's attorney fees.
 

 (Emphasis added.) Based on these findings of fact and conclusions of law, the trial court ordered the specific performance of $9,592.50 in attorneys' fees.
 

 Plaintiff argues that no evidence supported the trial court's finding that he had the ability to pay the attorneys' fees amount since he was unemployed at the time of the hearing and the trial court's finding of fact as to his checking account balance history only covered September 2013 to March 2014, or a few months before the July 2014
 
 *304
 
 hearing. But the trial court made numerous detailed findings of fact regarding plaintiff's financial situation and employment history and prospects, as quoted above, in addition to its finding that plaintiff maintained a significant checking account balance (ranging from $12,889.85 to $49,692.19). The award of attorneys' fees did not rely upon or require any imputation of income to plaintiff, as the trial court clearly considered the plaintiff's financial assets and checking account balances. Payment of the attorneys' fees
 
 *543
 
 is also a one-time expense, unlike the child support and alimony payments which are ongoing prospective obligations. In addition, we note that the trial court need not make a specific finding of a party's present ability to comply, as that phrase is used in the civil contempt context.
 
 See
 

 id.
 
 at 683, 501 S.E.2d at 696 ("In finding that the [supporting spouse] is able to perform a separation agreement, the trial court is not required to make a specific finding of the [supporting spouse's] 'present ability to comply' as that phrase is used in the context of civil contempt. In other words, the trial court is not required to find that the [supporting spouse] possesses some amount of cash, or asset readily converted to cash[,] prior to ordering specific performance.") (citations, quotation marks, and brackets omitted). But despite the fact that the trial court was not required to find that plaintiff had assets available to pay the attorneys' fees as in a civil contempt order, the trial court nonetheless did make findings that plaintiff had assets available to pay the attorneys' fees. Accordingly, we hold that the trial court did not abuse its discretion in ordering the specific performance of attorneys' fees.
 

 VI. Conclusion
 

 For the foregoing reasons, we affirm in part and vacate in part the trial court's order. We affirm the portions of the order in which the trial court awarded money judgments for the child support and alimony arrearages and unpaid joint credit card debt and ordered specific performance of defendant's attorney's fees. We vacate the portions of the order in which the trial court ordered specific performance of $2,900.00 monthly in child support and $1,385.00 monthly in alimony. We therefore remand the case to the trial court for further proceedings consistent with this opinion and direct that if either party requests to present additional evidence for the trial court's consideration on remand as may be needed to address the issues discussed in this opinion, the trial court shall allow presentation of evidence, although the trial court may in its discretion set reasonable limitations on the extent of new evidence presented.
 

 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 

 Judges CALABRIA and INMAN concur.
 

 [1]
 

 Plaintiff argues that the "record is devoid of any evidence of as to how it would be reasonable for Plaintiff to provide for not less than 81% of the needs of the minor children with no income." Because we are vacating the portion of the order in which the trial court ordered plaintiff to pay $2,900.00 monthly in child support, as discussed below, we do not address this issue.
 

 [2]
 

 Plaintiff also argues that the "trial court's finding that 'it is feasible for Plaintiff to earn $150,000 and with those earnings to support Defendant and their children' and that Plaintiff 'has the ability to quickly find employment earning at least $150,000' is not supported by the evidence and cannot stand." Because we are vacating the portions of the order in which the trial court ordered plaintiff to pay $2,900.00 monthly in child support and $1,385.00 monthly in alimony, as discussed below, we do not address this issue.
 

 [3]
 

 For the sake of brevity, we omit the trial court's table and note that in it, the trial court made many detailed findings of fact regarding defendant's reasonable attorneys' fees, which neither party challenges on appeal, and calculated a total amount of $9,592.50.