McGEE, Chief Judge.
 

 *26
 
 I.
 
 Factual and Procedural Background
 

 Kevin S. Lasecki ("Plaintiff") and Stacey M. Lasecki ("Defendant") married in 1993, and three children were born to the marriage. Plaintiff and Defendant separated and executed a separation agreement ("Separation Agreement") on 24 August 2012, that
 
 *300
 
 resolved issues of child custody, equitable distribution, child support, alimony, and attorney's fees. The separation agreement was never incorporated into an order of the trial court. Plaintiff had earned $286,505.00 in 2011, and earned $264,446.00 in 2012, working for Bath Solutions, Inc. ("Bath Solutions"). In the separation agreement, Plaintiff and Defendant agreed,
 
 inter alia
 
 , that Plaintiff would pay Defendant $2,900.00 per month in child support and $3,600.00 per month in alimony. They further agreed that, in the event either party breached the separation agreement, the breaching party would be liable for the other party's attorney's fees.
 

 Plaintiff lost his job with Bath Solutions in early 2013, but soon found employment with Phoenix Sales and Distribution ("Phoenix Sales"), at an annual salary of $160,000.00. Plaintiff filed a complaint on 1 August 2013, alleging that his income had significantly decreased since the execution of the separation agreement and requested that the trial court issue an order setting his child support obligation pursuant to the North Carolina Child Support Guidelines. Defendant answered on 19 September 2013, and counterclaimed for specific performance of Plaintiff's child support and alimony obligations under the separation agreement. Defendant also sought specific performance of unpaid joint credit card debt and attorney's fees, payment of child support and alimony arrearages, and "such other and further relief as to the court may seem just, fit and proper."
 

 Phoenix Sales terminated Plaintiff's employment on 1 May 2014. The trial court held a hearing on the pending claims on 17 and 18 July 2014, while Plaintiff was still unemployed and seeking a new job. Frontline Products, LLC ("Frontline") offered Plaintiff a job in Arizona on or about 21 July 2014, which Plaintiff immediately accepted. Plaintiff moved to reopen the case on 23 July 2014, to allow additional testimony regarding his new employment and income. The trial court denied Plaintiff's motion on 14 August 2014. The trial court entered an order on 28 August 2014, finding that it was "feasible for Plaintiff to earn $150,000.00 and with those earnings to support Defendant and their children." The trial court then concluded the $2,900.00 monthly child support amount set forth in the separation agreement was reasonable, and that Plaintiff was able to pay the full $2,900.00 monthly amount in child support and a reduced monthly amount of $1,385.00 in alimony. The trial court ordered
 
 *27
 
 as specific performance that Plaintiff pay these monthly amounts, as well as $9,592.50 for Defendant's attorney's fees, and awarded a money judgment of $54,432.31 for child support and alimony arrearages.
 

 Plaintiff moved for a new trial on 3 September 2014, arguing that the trial court should consider his new employment and income and that it erred in imputing to him an annual income of $150,000.00. The trial court denied Plaintiff's motion on 10 September 2014. Plaintiff gave notice of appeal on 23 September 2014, and the matter was heard by this Court on 9 September 2015. By opinion filed 5 April 2016, this Court affirmed in part and vacated and remanded in part, stating: "We vacate the portions of the order in which the trial court ordered specific performance of $2,900.00 monthly in child support and $1,385.00 monthly in alimony. We therefore remand the case to the trial court for further proceedings consistent with this opinion[.]"
 
 Lasecki v. Lasecki
 
 , --- N.C. App. ----, ----,
 
 786 S.E.2d 286
 
 , 304 (2016) ("
 
 Lasecki I
 
 "). This Court's reasoning for vacating the child support and alimony award portions of the trial court's order was because the trial court based its decision on the amounts of child support and alimony that Plaintiff was capable of paying on an imputed income of $150,000.00 when Plaintiff was unemployed, which was improper absent a finding that Plaintiff "was 'deliberately depressing his income' or 'indulging in excessive spending in disregard of his marital obligation to support his dependent spouse[.]' "
 
 Id
 
 . at ----,
 
 786 S.E.2d at 302
 
 (citations omitted).
 

 The hearing on remand was held on 10 and 11 May 2016. At the time of the hearing, Plaintiff was still employed by Frontline, and was making approximately $135,000.00 annually. However, as of 23 May 2016, Plaintiff was no longer employed by Frontline, and was allegedly working as a driver for Uber, earning only a small fraction of his former income. Plaintiff filed a motion to reopen the
 
 *301
 
 case on 26 May 2016, arguing that his change in employment status should be considered by the trial court before it made its rulings on the amount of child support and alimony. Plaintiff's motion to reopen was scheduled for 29 June 2016; however, the trial court entered its order from the 10 and 11 May 2016 remand hearing on 14 June 2016, approximately two weeks before the scheduled hearing on Plaintiff's motion to reopen the evidence.
 

 Plaintiff filed a Rule 60(b) motion on 20 June 2016 for relief from the 14 June 2016 order, arguing that he had not had any "meaningful hearing on his pending motion to reopen" and therefore entry of the 14 June 2016 order was premature. The trial court entered an amended remand order on 13 July 2016,
 
 nunc pro tunc
 
 14 June 2016.
 

 *28
 
 The trial court heard Plaintiff's motion to reopen the case and Plaintiff's Rule 60(b) motion for relief from the 14 June 2016 order concurrently, on 11 July 2016, and entered an order denying both of Plaintiff's motions on 13 July 2016. Plaintiff appeals.
 

 II.
 
 Analysis
 

 Plaintiff argues the trial court erred by: (1) "failing to reduce child support despite reduced needs of children, substantially decreased income of Plaintiff, and increased income of Defendant[;]" (2) "failing to give [Plaintiff] credit for overpayment of child support pursuant to court order[;]" (3) "granting Defendant additional judgment and attorney's fees when these issues were affirmed by the Court of Appeals[;]" (4) "ordering specific performance of alimony in [the] amount ordered[;]" (5) that even if the trial court did not err in awarding Defendant $10,905.00 in attorney's fees, it erred in ordering Plaintiff to pay those fees because there was insufficient evidence that Plaintiff had the ability to specifically perform payment in that amount; and (6) the trial court abused its discretion by denying Plaintiff's motion to reopen the case in light of relevant new evidence, and by denying his Rule 60(b) motion for relief from the 14 June 2016 order. We affirm.
 

 A.
 
 Child Support from August 2014 through June 2015
 

 Plaintiff contends that the "trial court committed reversible error by failing to reduce child support despite reduced needs of children, substantially decreased income of Plaintiff, and increased income of Defendant." We disagree.
 

 In
 
 Lasecki I
 
 , this Court looked to
 
 Pataky v. Pataky
 
 ,
 
 160 N.C. App. 289
 
 ,
 
 585 S.E.2d 404
 
 (2003), to determine the appropriate standard of review of child support previously established in an unincorporated separation agreement:
 

 In
 
 Pataky v. Pataky,
 
 this Court established the following test for determining the appropriate amount of child support where the parties have executed an unincorporated separation agreement:
 

 [I]n an initial determination of child support where the parties have executed an unincorporated separation agreement that includes provision for child support, the court should first apply a rebuttable presumption that the amount in the agreement is reasonable and, therefore, that application of the guidelines would be inappropriate. The court should determine the
 
 *29
 
 actual needs of the child at the time of the hearing, as compared to the provisions of the separation agreement.
 
 If the presumption of reasonableness is not rebutted, the court should enter an order in the separation agreement amount and make a finding that application of the guidelines would be inappropriate.
 
 If, however, the court determines by the greater weight of the evidence that the presumption of reasonableness afforded the separation agreement allowance has been rebutted,
 
 taking into account the needs of the children existing at
 

 the time of the hearing and considering the factors enumerated in the first sentence of G.S. § 50-13.4(c),
 
 the court
 
 then
 
 looks to the presumptive guidelines established through operation of G.S. § 50-13.4(c1) and the
 
 court may nonetheless deviate if
 
 , upon motion of either party or by the court
 
 sua sponte, it determines application of the guidelines would not meet or would
 

 *302
 

 exceed the needs of the child or would be otherwise unjust or inappropriate
 
 .
 

 The first sentence of
 
 N.C. Gen. Stat. § 50-13.4
 
 (c) provides:
 

 Payments ordered for the support of a minor child shall be in such amount as to meet the reasonable needs of the child for
 
 health, education, and maintenance
 
 , having due regard to the
 
 estates
 
 ,
 
 earnings,
 
 conditions,
 
 accustomed standard of living of the child
 
 and the parties, the
 
 child care and homemaker contributions of each party
 
 , and
 
 other facts of the particular case
 
 .
 

 Lasecki I
 
 , --- N.C. App. at ----,
 
 786 S.E.2d at 291
 
 (citations omitted) (some emphasis added). We review a trial court's decision to order child support payments in an amount different from the amount agreed to in the provisions of an unincorporated separation agreement only for " 'a clear abuse of discretion.' "
 
 Bottomley v. Bottomley
 
 ,
 
 82 N.C. App. 231
 
 , 235,
 
 346 S.E.2d 317
 
 , 320 (1986) (citation omitted).
 

 Further, an unincorporated separation agreement is generally treated as any other contract, and the equitable remedy of specific performance may be ordered only if no adequate remedy exists at law,
 
 Condellone v. Condellone
 
 ,
 
 129 N.C. App. 675
 
 , 681-82,
 
 501 S.E.2d 690
 
 , 695 (1998), and the party who is ordered to specifically perform is capable of doing so.
 
 Cavenaugh v. Cavenaugh
 
 ,
 
 317 N.C. 652
 
 , 657,
 
 347 S.E.2d 19
 
 , 22-23 (1986). An order directing specific performance "rests in the
 
 *30
 
 sound discretion of the trial court; and is conclusive on appeal absent a showing of a palpable abuse of discretion."
 
 Harborgate Prop. Owners Ass'n v. Mountain Lake Shores Dev. Corp.
 
 ,
 
 145 N.C. App. 290
 
 , 295,
 
 551 S.E.2d 207
 
 , 210 (2001) (citations omitted).
 

 Plaintiff states in his brief: "A party's ability to pay child support is determined by the party's income at the time the award is made.
 
 Atwell v. Atwell
 
 ,
 
 74 N.C. App. 231
 
 , 235,
 
 328 S.E.2d 47
 
 , 50 (1985)." This citation is flawed in the current context in multiple ways. First, it is an incomplete citation of the law as set forth in
 
 Atwell
 
 :
 

 Briefly, under N.C. Gen. Stat. Sec. 50-13.4(c)(1984), "an order for child support must be based upon the interplay of the trial court's conclusions of law as to (1) the amount of support necessary to 'meet the reasonable needs of the child' and (2) the relative ability of the parties to provide that amount." These conclusions must be based upon factual findings sufficiently specific to indicate that the trial court took "due regard" of the factors enumerated in the statute, namely, the "estates, earnings, conditions, accustomed standard of living of the child and the parties, the child care and homemaker contributions of each party, and other facts of the particular case."
 

 Id
 
 . at 234,
 
 328 S.E.2d at 49
 
 (citations omitted). A party's ability to pay is thus determined based upon multiple factors, and the language in
 
 Atwell
 
 cited by Plaintiff is within the context of explaining:
 

 Only when there are findings based on competent evidence to support a conclusion that the supporting spouse or parent is deliberately depressing his or her income or indulging in excessive spending to avoid family responsibilities, can a party's capacity to earn [as opposed to that party's actual current income] be considered.
 

 Id
 
 . at 235,
 
 328 S.E.2d at 50
 
 (citations omitted).
 

 More importantly,
 
 Atwell
 
 is a case involving a court order initially determining child support, not a request to deviate from a child support amount previously agreed upon in an unincorporated separation agreement. The trial court has continuing jurisdiction to revisit and modify its own child support orders.
 

 A
 
 judicial decree
 
 in a child custody and support matter is subject to alteration upon a change of circumstances
 
 *31
 
 affecting the welfare of the child and, therefore, is not final in nature. Consequently, the jurisdiction of the court entering such a decree continues as long as the minor child whose custody is the subject of the decree remains within its jurisdiction. The Superior Court of Rowan County rendered the original support and custody judgment in this action and under the above principles maintained continuing jurisdiction over
 
 *303
 
 further proceedings. Unless that court was somehow divested of its continuing jurisdiction, it was the only court which could modify the earlier judgment upon a motion in the cause and a showing of a change of circumstances.
 

 Stanback v. Stanback
 
 ,
 
 287 N.C. 448
 
 , 456,
 
 215 S.E.2d 30
 
 , 36 (1975) (citations omitted) (emphasis added). A trial court has no such broad authority to modify the child support provisions of an unincorporated separation agreement based upon a showing of changed circumstances.
 
 See
 

 Lasecki I
 
 , --- N.C. App. at ----,
 
 786 S.E.2d at 291
 
 . The present case does not involve modification of court-ordered child support.
 

 1.
 
 Policy and Precedent
 

 We initially review the policies and precedent supporting our current law concerning a trial court's authority to
 
 either
 
 modify the child support provisions of an unincorporated separation agreement,
 
 or
 
 to order specific performance of child support payments in amounts different from those previously established in an unincorporated separation agreement. Prior opinions of our appellate courts have at times blurred the distinction between review of an order based upon breach of an unincorporated separation agreement and review of an order based upon a prior child support order of the trial court, and Plaintiff appears to misunderstand the authority of the trial court in this regard. "It is well-settled that 'a parent can assume contractual obligations to his child greater than the law otherwise imposes ... and such agreements are binding and enforceable.' "
 
 Ross v. Voiers
 
 ,
 
 127 N.C. App. 415
 
 , 417,
 
 490 S.E.2d 244
 
 , 246 (1997). Further:
 

 To accord sufficient weight to parties' separation agreements, as our common law directs, the benchmark for comparison must be the amount needed for the children at the time of the hearing, compared with that provided in the agreement. Further, "in the absence of evidence to the contrary," the court must respect a presumption that "the amount mutually agreed upon is just and reasonable."
 

 *32
 

 Pataky
 
 ,
 
 160 N.C. App. at 303
 
 ,
 
 585 S.E.2d at 413
 
 (citations omitted). Further,
 

 "A separation agreement is a contract between the parties and
 
 the court is without power to modify it except
 
 (1) to
 
 provide for adequate support for minor children
 
 , and (2) with the
 
 mutual consent of the parties
 
 thereto where rights of third parties have not intervened." However, our Courts have been quick to note:
 

 [N]o agreement or contract between husband and wife will serve to deprive the courts of their inherent as well as their statutory authority to
 
 protect the interests and provide for the welfare of infants
 
 . They
 
 may bind themselves
 
 by a separation agreement or by a consent judgment, but they
 
 cannot thus withdraw children of the marriage from the protective custody of the court
 
 .
 

 Id
 
 . at 296,
 
 585 S.E.2d at 409
 
 (citations omitted) (emphasis added).
 

 Relative to the present case, and contrary to Plaintiff's position, the trial court
 
 was without authority
 
 , absent Defendant's consent, to modify the separation agreement solely for the purposes of
 
 reducing
 
 his child support obligation. Even with Defendant's consent, Plaintiff and Defendant could not, by contract, deprive the trial court of its inherent authority and obligation to insure their minor children were properly provided for.
 
 Boyd v. Boyd
 
 ,
 
 81 N.C. App. 71
 
 , 75,
 
 343 S.E.2d 581
 
 , 584 (1986) ("[i]t is well established that the provisions of a separation agreement relating to ... support of minor children are not binding on the court, which has the inherent and statutory authority to protect the interests of children"). In the present case, Plaintiff and Defendant have not mutually consented to modification of the separation agreement. Therefore, the trial court's rulings in the present case must be based solely upon its inherent and statutory authority to provide for the welfare of Plaintiff's and Defendant's minor children.
 

 Traditionally, the authority of the trial court to order the supporting parent to pay child support in an amount different than established in an unincorporated separation agreement has been recognized as a means of insuring adequate maintenance of the children involved-
 
 not
 
 as a means of lessening the agreed-upon contractual duties of the
 
 *304
 
 supporting parent based upon changed circumstances. Stated differently, the question for the trial court was limited to whether the needs of the children were being adequately met by the amount of child support agreed upon in the unincorporated separation agreement, or whether the amount of child support should be
 
 increased
 
 in order to meet the children's needs.
 

 *33
 
 Within the statutory framework, the North Carolina Supreme Court established a two-step process in claims for child support
 
 in the presence of a prior, unincorporated agreement
 
 . Our trial courts were required to
 
 first
 
 determine the current amount necessary to meet the needs of the children and,
 
 if this amount "substantially exceeds" the amount provided in the agreement
 
 , this would rebut the presumption that the amount in the separation agreement was reasonable.
 
 In the absence of such a showing
 
 , affording "due regard to the factors contained in G.S. § 50-13.4(b) and (c),"
 
 the court was not allowed to change the amount of child support from what was set forth in the separation agreement
 
 . (referring to statutory factors existing in 1986).
 

 Pataky
 
 ,
 
 160 N.C. App. at 300-01
 
 ,
 
 585 S.E.2d at 412
 
 (citations omitted) (emphasis added).
 

 This Court has recognized that public policy only requires the trial court to insure that the amount of child support being provided for in an unincorporated separation agreement is adequate to the needs of the children involved:
 

 A separation agreement is modified by increasing child support payments where the party with custody establishes that the separation agreement provisions do not adequately protect the interests of and provide for the welfare of the children. But
 
 no principal of public policy intervenes to relieve a party from the obligations of a separation agreement requiring support payments in excess of or other payments in addition to that required by law
 
 .
 

 McKaughn v. McKaughn
 
 ,
 
 29 N.C. App. 702
 
 , 704,
 
 225 S.E.2d 616
 
 , 618 (1976) (citations omitted) (emphasis added).
 

 Nonetheless, this Court eventually recognized the
 
 discretionary
 
 authority of the trial court to order specific performance of contractual child support obligations in a
 
 decreased
 
 amount, based upon the current needs of the children involved and the current financial standing of their parents.
 
 [1]
 

 Bottomley
 
 ,
 
 82 N.C. App. at 234
 
 ,
 
 346 S.E.2d at 320
 
 . One salutary purpose of this discretionary authority is that entry of the order
 
 *34
 
 for specific performance provides the trial court with the authority to enforce the reduced child support obligation through its contempt powers, whereas the provisions of an unincorporated separation agreement are only enforceable through bringing an action for breach of contract, and thereby obtaining a judgment for monetary damages.
 

 "It is settled that any separation agreement dealing with the custody and the support of the children of the parties cannot deprive the [trial] court of its inherent as well as statutory authority to protect the interests of and provide for the welfare of minors." While in the
 
 usual case
 
 the custodial parent obtains an
 
 increase
 
 in the agreed-upon support, this Court has upheld an order setting a lesser amount than that provided for by the applicable separation agreement. [This] Court stated: "The judgment in this case does not change plaintiff's contractual obligations under the separation agreement. The question before the [trial] court was what amount it would
 
 require
 
 in the exercise of its inherent and statutory authority to provide for the welfare of [the] minors."
 

 ....
 

 [W]hile the [trial] court
 
 could not relieve plaintiff-husband of any contractual obligation he assumed
 
 to support his child in excess of what the law would require-it could, "in the exercise of its inherent and statutory authority to provide for the welfare of minors," order payment of an amount either larger or smaller than that provided for in the agreement.
 
 That amount should be "a reasonable subsistence, to be determined by the trial [court] in the exercise of a sound judicial discretion from the evidence before [the trial
 

 *305
 

 court]
 
 . [Its] determination ...
 
 will not be disturbed in the absence of a clear abuse of discretion
 
 ."
 

 The effect of such an order is not to deprive defendant-wife of her contractual right to recover the sums provided for in the agreement, but
 
 to limit her contempt remedy to the sums provided for by the court order
 
 .
 

 Although a court may increase or decrease its own prior award for the support of a minor child,
 
 a court cannot intervene to reduce or relieve a parent from his contractual obligations to support his child in excess of that required by law
 
 . A parent can by contract assume
 
 *35
 
 a greater obligation to his child than the law imposes.
 
 Thus, if the court allows the child's [custodial parent] less money for support for [the] child than does the valid separation agreement between the child's parents, the remedy of the [custodial parent] is to sue the [non-custodial parent] for breach of contract and obtain a judgment for the difference. The [non-custodial parent's] duty under the court order may be enforced by
 

 contempt proceedings, while his [or her] contractual obligations may not be so enforced.
 

 Bottomley
 
 ,
 
 82 N.C. App. at 234-36
 
 ,
 
 346 S.E.2d at 320-21
 
 (citations omitted) (some emphasis added).
 

 If the trial court determines that a party to an unincorporated separation agreement is unable to perform the child support provisions therein, it
 
 cannot modify the agreement
 
 to lessen that party's burden; it can only decide not to order specific performance of the child support provision, or order specific performance of the child support provision in an amount less than that established in the agreement.
 
 Id
 
 . As noted above, a contract is only enforceable through the equitable remedy of specific performance where no adequate remedy at law exists, and the person ordered to perform has the ability to do so.
 
 Condellone
 
 ,
 
 129 N.C. App. at 681-82
 
 ,
 
 501 S.E.2d at 695
 
 . A plaintiff who "relies on damages to compensate for the breach of a separation agreement which has not been incorporated into a court order generally does not have an adequate remedy at law."
 
 Id
 
 . at 682,
 
 501 S.E.2d 690
 
 , 695 (citation omitted) (" 'The plaintiff must wait until payments have become due and the obligor has failed to comply. Plaintiff must then file suit for the amount of accrued arrearage, reduce her claim to judgment, and, if the defendant fails to satisfy it, secure satisfaction by execution. As is so often the case, when the defendant persists in his refusal to comply, the plaintiff must resort to this remedy repeatedly to secure her rights under the agreement as the payments become due and the defendant fails to comply.' ").
 

 We review a trial court's order in this regard on a case by case basis:
 

 What amount is reasonable for a child's support is to be determined with reference to the special circumstances of the particular parties. Things which might properly be deemed necessaries by the family of a [parent] of large income would not be so regarded in the family of a [parent] whose earnings were small and who had not been able to accumulate any savings. In determining that amount
 
 *36
 
 which is reasonable, the trial judge has a wide discretion with which this court will not interfere in the absence of a manifest abuse.
 

 Williams v. Williams
 
 ,
 
 261 N.C. 48
 
 , 57-58,
 
 134 S.E.2d 227
 
 , 234 (1964) (citations omitted).
 

 2.
 
 The Present Case
 

 In the case before us, Plaintiff
 
 limits his argument to challenging the imposition of child support at $2,900.00 per month for the period of time from 1 August 2014 until 30 June 2015
 
 (or, "the relevant period"). Plaintiff does not challenge the amount of child support for the period from 24 August 2012 through 1 August 2014; nor does he challenge the amount for the period from 1 August 2015 to the present. Plaintiff specifically contends:
 

 The trial court's finding that Plaintiff did not rebut the presumption of reasonableness as to the $2,900.00 per month in child support set forth in the separation agreement is not supported by competent evidence as the trial court failed to consider the reduced needs of the children, the substantially reduced income of [ ] Plaintiff,
 
 *306
 
 and the increased income of [ ] Defendant between the execution of the separation agreement in August 2012 and the parties' oldest child reaching the age of majority in July of 2016.
 

 As noted above, the trial court in the present case has not, and cannot,
 
 modify
 
 the Separation Agreement to decrease the amount of child support Plaintiff owed Defendant in the past, or the amount of child support Plaintiff owes Defendant moving forward. The terms of the Separation Agreement establish Plaintiff's contractual duties, and these are not affected by the order of the trial court.
 
 Bottomley
 
 ,
 
 82 N.C. App. at 234-36
 
 ,
 
 346 S.E.2d at 320-21
 
 .
 

 When the trial court addressed Plaintiff's breach of the Separation Agreement based upon his prior underpayment of the contractually established amount of child support, it was not making a determination of whether Plaintiff actually
 
 owed
 
 the unpaid amounts.
 
 Id
 
 . The trial court was limited to determining the proper remedy for Plaintiff's breach. In situations like the one before us, specific performance could be the proper remedy, but only if the trial court properly determined that no remedy at law was adequate, and that Plaintiff was capable of specifically performing that part of the contract: "A marital separation agreement which has
 
 *37
 
 not been incorporated into a court order is 'generally subject to the same rules of law with respect to its enforcement as any other contract.' Where no adequate remedy at law exists, a contract is enforceable through the equitable remedy of specific performance."
 
 Condellone
 
 ,
 
 129 N.C. App. at 681-82
 
 ,
 
 501 S.E.2d at 695
 
 (citations omitted).
 

 In determining whether standard money damages will constitute an adequate remedy at law, the trial court considers factors which include the "difficulty and uncertainty of collecting such damages after they are awarded[.]"
 
 Whalehead Properties v. Coastland Corp.
 
 ,
 
 299 N.C. 270
 
 , 283,
 
 261 S.E.2d 899
 
 , 908 (1980) (citation omitted). However, "[s]pecific performance will not be decreed against a defendant who is incapable of complying with his contract."
 
 Cavenaugh
 
 ,
 
 317 N.C. at 657
 
 ,
 
 347 S.E.2d at 22-23
 
 (citations omitted). A trial court that has determined a party is not currently capable of specifically performing one or more of his obligations under a contract could still enter a money judgment against that party in the entire amount of the damages resultant from his breach. This award would establish the total amount of damages owed due to the breach, but the trial court could not order the party to specifically perform immediate payment of those damages.
 

 In the present case, concerning child support moving forward, the trial court concluded:
 

 No adequate remedy at law exists with respect to the periodic payments required by the [separation] agreement and [D]efendant is entitled to specific performance of the contract. .... Th[is] court may not modify a separation agreement but may order specific performance of only that part of the agreement [P]laintiff is able [to] perform.
 

 The trial court further concluded: "At this time, the [trial] court is unable to find that [P]laintiff could reasonably comply with an order requiring specific performance of a payment of all of the remaining damages suffered by [D]efendant due to [P]laintiff's breach[.]" In light of the trial court's determination that Plaintiff was incapable of fully performing under the Separation Agreement, it only ordered specific performance of his alimony obligations moving forward in the reduced amount of $2,850.00 per month and, more importantly to this analysis, the trial court ordered the following with respect to Plaintiff's child support and alimony arrearages:
 

 Defendant shall have and recover of [P]laintiff damages in the sum of $46,480.71 for [Plaintiff's] failure to pay alimony and child support pursuant to the terms of the
 
 *38
 
 [S]eparation [A]greement through April 30, 2016.
 
 This portion of the judgment shall be enforceable as other money judgments
 
 and shall bear interest at the legal rate from April 30, 2016 pursuant to N.C.G.S. § 24-5.
 

 The trial court's order for
 
 specific performance
 
 of child support payments in the amount of $1,688.00 per month
 
 did not go
 

 *307
 

 into effect until 1 May 2016
 
 , and Plaintiff does not challenge this part of the remand order. Concerning child support for the period challenged by Plaintiff-1 August 2014 until 30 June 2015-
 
 no specific performance was ordered
 
 . Plaintiff was simply ordered to pay the damages resultant from his breach of the contract as an ordinary money judgment.
 
 [2]
 
 The trial court had no authority to deny Defendant her right to sue for breach of the specific terms of the Separation Agreement, and the trial court had no authority to order damages for Plaintiff's breach in an amount less than called for in the Separation Agreement. Plaintiff only challenges those portions of the 14 June 2016 order on remand that required specific performance, and the portion of the order awarding Defendant $46,480.71 in money damages did not involve specific performance.
 
 Bottomley
 
 ,
 
 82 N.C. App. at 234-36
 
 ,
 
 346 S.E.2d at 320-21
 
 .
 
 [3]
 
 The trial court did not err, much less abuse its discretion, by ordering Plaintiff to pay the full breach of contract damages, "enforceable as other money judgments[.]"
 
 *39
 
 B.
 
 Overpayment of Prior Child Support
 

 Plaintiff next argues that the trial court erred "by failing to give [Plaintiff] credit for overpayment of child support pursuant to court order." We disagree.
 

 We first note that, in this argument, Plaintiff references a motion for contempt filed by Defendant on 25 July 2016, and the resulting order entered 4 October 2016, which Plaintiff includes in the record.
 
 [4]
 
 However, there is no record evidence that Plaintiff appealed the 4 October 2016 order and, more importantly, we cannot analyze the trial court's earlier orders based upon findings it made in a subsequent order. The 4 October 2016 order is not properly before us, and we do not consider it.
 

 Plaintiff argues that, during the period between 1 August 2014 and 14 June 2016, he paid $2,900.00 per month in child support through centralized collections and wage withholding. However, according to the amended order, Plaintiff only owed $2,900.00 per month in child support from 1 August 2014 until 1 July 2015, and thereafter owed a reduced amount of $1,688.00 per month beginning 1 July 2015. For this reason, Plaintiff argues, he should receive a credit for the period "[b]etween July 1, 2015 and June 14, 2016 when the remand trial order was entered[.]" Plaintiff contends he "overpaid" his child support obligation during this time period by $1,212.00 per month, or $14,544.00 in total.
 
 [5]
 
 According to Plaintiff, "[t]he trial
 
 *308
 
 court's remand order failed to address how Plaintiff would be given credit for the overpayment of child support."
 

 Plaintiff has already received credit for his overpayment of child support in the form of a reduction in the trial court's calculation of his total child support arrearage. In the remand order, the trial court found as fact that "[s]ince the hearing on July 18, 2014 [P]laintiff made [$89,899.29 in] payments to [D]efendant for alimony and child support through 4/30/2016[.]" However, during this same period, the trial court found
 
 *40
 
 that Plaintiff's total obligations for alimony and child support amounted to $136,380.00, leaving Plaintiff $46,480.71 in arrears for that period. In the table calculating Plaintiff's obligations for the relevant period, the trial court found that Plaintiff was obligated to pay $31,900.00 for: "Child Support 8/1/2014 through 6/1/2015 (11 months @ $2,900.00 per month)" and $16,880.00 for: "Child Support 7/1/2015 through 4/1/2016 (
 
 10 months @ $1,688.00 per month
 
 )."
 
 [6]
 
 (Emphasis added). The trial court made the following finding of fact: "[P]laintiff has continued to breach the separation agreement and [D]efendant has suffered additional damages in the sum of $46,480.71 through 4/30/2016."
 
 This amount already factors in a reduction in Plaintiff's child support obligation from 1 July 2015 through 1 April 2016.
 
 Had the trial court not credited Plaintiff with the $12,120.00 "overpayment" of child support from 1 July 2015 through 1 April 2016, and demanded that Plaintiff specifically perform based upon a $2,900.00 per month child support obligation for the entire 1 August 2014 to 1 April 2016 time period, Plaintiff would have been found to be $58,600.71 in arrears instead of $46,480.71. This argument is without merit.
 

 C.
 
 Attorney's Fees
 

 Plaintiff contends the trial court erred "by granting Defendant additional judgment and attorney's fees when these issues were affirmed by the Court of Appeals[.]" We disagree.
 

 Plaintiff is correct that the decision of this Court in
 
 Lasecki I
 
 constitutes the law of the case, both in subsequent proceedings in the trial court and on a subsequent appeal.
 
 Transportation, Inc. v. Strick Corp.,
 

 286 N.C. 235
 
 , 239,
 
 210 S.E.2d 181
 
 , 183 (1974). "[O]ur mandate is binding upon [the trial court] and must be strictly followed without variation or departure. No judgment other than that directed or permitted by the appellate court may be entered."
 
 D & W, Inc. v. City of Charlotte,
 

 268 N.C. 720
 
 , 722,
 
 152 S.E.2d 199
 
 , 202 (1966). Therefore, upon remand from
 
 Lasecki I
 
 , the trial court was without authority to alter any portion of its 28 August 2014 order that had been affirmed in
 
 Lasecki I
 
 . However, the trial court was free to address anew portions of its 28 August 2014 order that were vacated by
 
 Lasecki I
 
 . In
 
 Friend-Novorska v. Novorska
 
 ,
 
 131 N.C. App. 867
 
 ,
 
 509 S.E.2d 460
 
 (1998) ("
 
 Friend-Novorska I
 
 "), this Court affirmed parts of an alimony order; however,
 

 *41
 
 [t]he remainder of the trial court's decision was vacated and remanded to the trial court for "a new award of alimony" and "specific findings justifying that award." The term "vacate" means: "To annul; to set aside; to cancel or rescind. To render an act void; as, to vacate ... a judgment." Thus, the vacated portions of the 17 October 1997 order were void and of no effect. On remand, therefore, the trial court was free to reconsider the evidence before it and to enter new and/or additional findings of fact based on the evidence, with the exception that the trial court was bound on remand by any portions of the 17 October 1997 order affirmed by this Court in
 
 Friend-Novorska I
 
 .
 

 Friend-Novorska v. Novorska
 
 ,
 
 143 N.C. App. 387
 
 , 393-94,
 
 545 S.E.2d 788
 
 , 793 (2001)
 

 *309
 
 ("
 
 Friend-Novorska II
 
 ") (citation omitted). In
 
 Lasecki I
 
 , this Court held:
 

 For the foregoing reasons, we affirm in part and vacate in part the trial court's order. We affirm the portions of the order in which the trial court awarded money judgments for the child support and alimony arrearages and unpaid joint credit card debt and ordered specific performance of defendant's attorney's fees. We vacate the portions of the order in which the trial court ordered specific performance of $2,900.00 monthly in child support and $1,385.00 monthly in alimony. We therefore remand the case to the trial court for further proceedings consistent with this opinion[.]
 

 Lasecki I
 
 , --- N.C. App. at ----,
 
 786 S.E.2d at 304
 
 . Plaintiff argues that the trial court violated the mandate of this Court by assessing Plaintiff $10,905.00 in additional attorney's fees associated "with the costs of the post remand trial that was created by the trial court's error [in establishing alimony and child support by improperly imputing income to Plaintiff]." The Separation Agreement states regarding attorney's fees: "If either party breaches any of the provisions of this Agreement, [then] the breaching party shall be required to pay reasonable attorney fees of the party whose contractual rights hereunder were violated by said breach." In its 28 August 2014 order, the trial court concluded: "Plaintiff has breached the Agreement. Defendant has incurred reasonable attorney fees in response to that breach. Pursuant to the Separation Agreement Defendant is entitled to recover these fees." This Court affirmed that portion of the 28 August 2014 order in
 
 Lasecki I
 
 , and Plaintiff was required to pay Defendant $9,592.50 in attorney's fees.
 

 *42
 
 Contrary to Plaintiff's argument, our holding in
 
 Lasecki I
 
 did not establish a final determination of the attorney's fees Plaintiff might be required to pay Defendant. Instead, we merely affirmed the award of that particular amount of attorney's fees for the work done up to the point of the 28 August 2014 order. Plaintiff's obligation pursuant to the Separation Agreement to "pay reasonable attorney fees of the party whose contractual rights hereunder were violated by [Plaintiff's] breach" of the Separation Agreement is ongoing. If the trial court continues to find Plaintiff in breach, it may, pursuant to the terms of the Separation Agreement, continue to award Defendant reasonable attorney's fees. The fact that the matter was back in front of the trial court based upon our decision partially vacating and remanding the 28 August 2014 order is immaterial. Appeal is a normal and regular part of the judicial process, and since Plaintiff was the party in breach of the Separation Agreement, it would violate the terms of the Separation Agreement to compel Defendant to pay for additional attorney's fees associated with Plaintiff's breach.
 

 In its 14 June 2016 order on remand, the trial court concluded: "The [S]eparation [A]greement entered by the parties on August 24, 2012 is a valid [A]greement. Defendant has performed her obligations under the contract and Plaintiff has breached the [A]greement." So long as the trial court properly determined that Plaintiff was in breach of the Separation Agreement, it had the authority to award additional attorney's fees. This argument is without merit.
 

 D.
 
 Alimony
 

 Plaintiff argues the trial court "committed reversible error by ordering specific performance of alimony in amount ordered." We disagree.
 

 Plaintiff states: "Pursuant to the remand order [Plaintiff] was ordered to pay $1,688.00 in child support
 
 and specifically perform $2,850.00 in alimony beginning July 1, 2015
 
 ." (Emphasis added). Though Plaintiff is correct that his child support obligation dropped to $1,688.00 on 1 July 2015, Plaintiff is incorrect concerning the date on which specific performance of $2,850.00 in alimony was ordered to commence. Section four of the decretal portion of the 14 June 2016 order on remand states: "Plaintiff shall pay [D]efendant alimony pursuant to the [S]eparation [A]greement in the sum of $2,850.00 per month beginning 5/1/16." Because Plaintiff's income prior to the May 2016 hearing was irrelevant to the amount of alimony the trial court ordered Plaintiff to pay beginning on 1 May 2016, we do not address Plaintiff's
 
 *310
 
 arguments regarding salaries he was earning more than a year before the remand hearing in
 
 *43
 
 May 2016. Further, Plaintiff seeks to have this Court analyze the four-month period from "August 2014 until December 2014" in isolation, in order to find an abuse of discretion in the trial court's ordering alimony in the reduced amount of $1,385.00 per month in its
 
 28 August 2014 order
 
 . That portion of the 28 August 2014 order was vacated, and has no relevance to our current analysis.
 

 The following relevant portion of the Separation Agreement established Plaintiff's alimony obligations: "[Plaintiff] shall pay [Defendant] base alimony in the amount of $3,600.00 per month. This alimony shall be payable for a period of nine years[.] This alimony shall be fixed and is non-modifiable in all respects."
 

 Under [
 
 N.C. Gen. Stat. § 52-10.1
 
 ], both parties to a divorce may enter into [an] agreement to settle the question of alimony, and the terms of the agreement are binding and may be modified only with the consent of both parties. Further, a separation agreement not incorporated into a final divorce decree (as in the present case) may be enforced through the equitable remedy of specific performance.
 

 In
 
 Cavenaugh
 
 , our Supreme Court held that "when a defendant has offered evidence tending to show that he is unable to fulfill his obligations under a separation agreement or other contract the trial judge must make findings of fact concerning the defendant's ability to carry out the terms of the agreement before ordering specific performance."
 

 Edwards v. Edwards
 
 ,
 
 102 N.C. App. 706
 
 , 708-09,
 
 403 S.E.2d 530
 
 , 531 (1991) (citations omitted).
 

 " 'Parties to a divorce may enter into a valid agreement settling the question of alimony, and unless the court then orders alimony to be paid, the terms of the agreement are binding and can only be modified by the consent of both parties.' "
 
 Jones v. Jones
 
 ,
 
 144 N.C. App. 595
 
 , 598,
 
 548 S.E.2d 565
 
 , 567 (2001) (citation omitted). Unlike child support and custody issues involving minors, the trial court has no " 'inherent [or] statutory authority to protect the interests and provide for the welfare of' " competent adults.
 
 See
 

 Pataky
 
 ,
 
 160 N.C. App. at 296
 
 ,
 
 585 S.E.2d at 409
 
 (citations omitted).
 

 "A separation agreement is a contract between the parties and
 
 the court is without power to modify it
 
 except (1) to provide for adequate support for minor children, and (2)
 
 with the mutual consent of the parties thereto where rights of third parties have not intervened
 
 ."
 

 *44
 

 Id
 
 . (citations omitted) (emphasis added). In Defendant's counterclaim, she requested specific performance of the alimony portion of the Separation Agreement, because Plaintiff had not been performing pursuant to the terms of that Agreement. As noted above:
 

 "A marital separation agreement is generally subject to the same rules of law with respect to its enforcement as any other contract." Specific performance will not be decreed against a defendant who is incapable of complying with his contract. "A court can properly order specific performance of only part of a contract if it deems another portion unworkable."
 

 Cavenaugh
 
 ,
 
 317 N.C. at 657
 
 ,
 
 347 S.E.2d at 22-23
 
 (citations omitted);
 
 Condellone
 
 ,
 
 129 N.C. App. at 682
 
 ,
 
 501 S.E.2d at 695
 
 (citation omitted) ("As a general proposition, the equitable remedy of specific performance may not be ordered 'unless such relief is feasible[;'] therefore courts may not order specific performance 'where it does not appear that [the responsible party] can perform.' "). However,
 

 In finding that the defendant is able to perform a separation agreement, the trial court is not required to make a specific finding of the defendant's "present ability to comply" as that phrase is used in the context of civil contempt. In other words, the trial court is not required to find that the defendant "possess[es] some amount of cash, or asset readily converted to cash" prior to ordering specific performance.
 

 Id
 
 . at 683,
 
 501 S.E.2d at 696
 
 (citations omitted).
 

 Therefore, the trial court had
 
 no
 
 authority to alter the terms of alimony as set forth in the Separation Agreement, but it could order specific performance of the Agreement in an
 
 *311
 
 amount less than that demanded in the Agreement upon determining that Plaintiff
 
 was not capable
 
 of performing to the full extent of his obligations.
 
 See
 

 Edwards
 
 ,
 
 102 N.C. App. at 710
 
 ,
 
 403 S.E.2d at 532
 
 (emphasis added) (although underestimating the defendant's monthly expenses "may have no effect on the trial court's order of specific performance [of the alimony portion of an unincorporated separation agreement], it may have an effect on
 
 the amount
 
 defendant can reasonably afford to pay plaintiff on a monthly basis").
 

 Following the remand order, Plaintiff is still contractually obligated to pay Defendant alimony in the amount of $3,600.00 per month. However, the trial court only granted Defendant specific performance by Plaintiff for his alimony obligation in the amount of $2,850.00 per
 
 *45
 
 month, beginning 1 May 2016. The trial court found that Plaintiff was in breach of the Separation Agreement, that specific performance was an appropriate remedy, but that "the [trial] court is unable to find that [P]laintiff could reasonably comply with an order requiring specific performance of a payment of all of the remaining damages suffered by [D]efendant due to [P]laintiff's breach of the [A]greement." Therefore, the trial court ruled:
 

 Defendant's prayer for specific performance of the alimony provisions of the [A]greement [is] granted in part. Plaintiff shall pay [D]efendant alimony pursuant to the [S]eparation [A]greement in the sum of $2,850.00 per month beginning 5/1/16. .... This paragraph is ordering specific performance of a portion of [P]laintiff's obligation under the [A]greement due to [P]laintiff's inability to currently fully perform. This decree is not a modification of [P]laintiff's obligation under the contract[.]
 

 Plaintiff argues that there was insufficient evidence presented supporting his ability to pay alimony in the reduced amount of $2,850.00 per month. Plaintiff states that "[t]he ability of a party to perform an obligation
 
 included in a separation agreement as required for specific performance
 
 is ordinarily determined by the party's income at the time the award is made[.]" (Emphasis added). This is an incorrect statement of law. Determination of the ability to pay alimony agreed upon
 
 *312
 
 in an unincorporated separation agreement is not limited to the factors utilized in determining an ability to pay court ordered alimony, because the basis of the obligation in an unincorporated separation agreement is contract, not statute.
 

 Plaintiff cites
 
 Edwards
 
 in support of this claim;
 
 Edwards
 
 is inapposite. In
 
 Edwards
 
 , this Court held that the trial court had incorrectly calculated the defendant's [responsible spouse's] expenses, which might affect the amount of alimony it would order the defendant to specifically perform pursuant to an unincorporated separation agreement. The plaintiff in
 
 Edwards
 
 argued that the error was harmless because the defendant had other sources of income that more than covered the deficit created by the underestimation of the defendant's expenses. In the context of this analysis, this Court stated:
 

 There is no evidence before this Court that either of the above income sources for the year may be considered regular income and therefore included in calculating defendant's net monthly income.
 
 See
 

 *46
 

 Whedon v. Whedon
 
 ,
 
 58 N.C. App. 524
 
 ,
 
 294 S.E.2d 29
 
 (1982) (a spouse's ability to pay alimony is usually determined by his income at the time the award is made). Moreover, there is evidence that the income tax refund is a joint refund to both defendant and his present wife; therefore, for the purposes of the case before us, it would appear that defendant would be entitled to only half of such refund. We find that the trial court's miscalculation of defendant's expenses relative to his monthly income is a prejudicial error and therefore must be addressed by the trial court.
 

 Edwards
 
 ,
 
 102 N.C. App. at 710-11
 
 ,
 
 403 S.E.2d at 532
 
 (citation omitted).
 

 We first note that
 
 Whedon
 
 , the decision relied upon in
 
 Edwards
 
 , is an opinion involving
 
 court ordered
 
 alimony, and does not involve an action for specific performance to enforce an unincorporated separation agreement. Even though
 
 Edwards
 
 concerns specific performance of an unincorporated separation agreement, the
 
 Whedon
 
 parenthetical does not constitute a holding that determination of an ability to pay alimony established in an unincorporated separation agreement is limited to the responsible party's income. Finally, Plaintiff seems to ignore that part of the parenthetical that states: "ability to pay alimony is usually determined by ... income
 
 at the time the award is made
 
 [,]"
 
 Edwards
 
 ,
 
 102 N.C. App. at 710
 
 ,
 
 403 S.E.2d at 532
 
 (citation omitted) (emphasis added), as Plaintiff directs this Court to his income at various times
 
 prior
 
 to the time the current award was made.
 

 Further, the remand order limits specific performance of alimony in the reduced amount of $2,850.00 per month to the time period beginning 1 May 2016. To the extent that unpaid alimony prior to 1 May 2016 was included in the remand order, it was included as part of the $46,480.71 money judgment, and does not implicate any specific performance analysis.
 

 At the time the award was made, Plaintiff was found to have an annual income of $135,000.00, or $11,250.00 per month. The trial court found that Plaintiff's total expenses before alimony-which included child support, taxes, Social Security, and Medicare-were $8,396.80 per month. Finding of fact 53 states: "Plaintiff's actual current income exceeds his reasonable expenses by $2,853.20 per month." Plaintiff does not specifically contest this finding of fact.
 
 Koufman v. Koufman
 
 ,
 
 330 N.C. 93
 
 , 97,
 
 408 S.E.2d 729
 
 , 731 (1991) ("Although plaintiff excepted to ... several findings of fact by the trial court, plaintiff [made no] exception to ... finding of fact (2), quoted above. Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported
 
 *47
 
 by competent evidence and is binding on appeal."). We are therefore bound by the trial court's finding that "Plaintiff's actual current income exceeds his reasonable expenses by $2,853.20 per month."
 

 The trial court ordered specific performance of alimony reduced from $3,600.00 to $2,850.00 per month which, according to the trial court's calculations, Plaintiff could afford to pay entirely from his monthly income. Plaintiff argues that the trial court should have considered his attorney's fees and Defendant's attorney's fees as part of his monthly expenses; and that the trial court erred in finding that "Plaintiff's household expenses should be split evenly between Plaintiff and his current wife[.]" Plaintiff directs this Court to no authority supporting his claim that the attorney's fees he was required to pay due to his breach of the Separation Agreement should be factored into his monthly expenses, nor that the trial court erred in determining that Plaintiff's current wife contributes to their joint expenses. It was Plaintiff's duty,
 

 and not the duty of this Court, to challenge findings and conclusions, and make corresponding arguments on appeal. It is not the job of this Court to "create an appeal for" [Plaintiff]. .... "It is not the duty of this Court to supplement an appellant's brief with legal authority or arguments not contained therein. Th[ese] [arguments are] deemed abandoned by virtue of N.C. R. App. P. 28(b)(6)."
 

 Sanchez v. Cobblestone Homeowners Ass'n.
 
 , --- N.C. App. ----, ----,
 
 791 S.E.2d 238
 
 , 245-46 (2016) (citations omitted). Further, Plaintiff supports his arguments with references to the transcript of the 10 and 11 May 2016 hearing. However, Plaintiff did not include this transcript in the record, so we have no way of verifying Plaintiff's claims concerning whether there was evidence presented concerning the level of contribution Plaintiff's current wife made to their joint living expenses. This argument is without merit.
 

 E.
 
 Specific Performance of Attorney's Fees
 

 Plaintiff argues that, even if the trial court did not err in awarding Defendant $10,905.00 in attorney's fees, it erred in ordering him to pay those fees when "there was no evidence before the [trial] court that Plaintiff had the ability to specifically perform the payment of $10,905.00 with not even enough money in Plaintiff's bank account to pay his obligations for one month and his depleted retirement." We disagree.
 

 Plaintiff contends the amount he had in his checking account at the time of entry of the remand order, $7,425.94, was insufficient to
 
 *48
 
 pay Defendant's attorney's fees, and that "Plaintiff still owed taxes on the withdrawals
 
 *313
 
 made in 2016" from his retirement accounts, though Plaintiff does not indicate the amount of his tax liability. Plaintiff includes no citations to authority in support of his argument and it is not the duty of this Court to search for such authority.
 
 Sanchez
 
 , --- N.C. App. at ----,
 
 791 S.E.2d at 245-46
 
 .
 

 Further, in the remand order the trial court found the following facts regarding Plaintiff's assets that could be used to pay attorney's fees: Plaintiff (1) had at least two IRA accounts that, combined, contained $68,458.87 on 31 March 2016; (2) withdrew $25,000.00 "from his retirement" in early April 2016 "to pay taxes and his attorney fees[;]" (3) "[a]s of 4/27/2016 [P]laintiff had a vested balance in his 401K with his current employer in the sum of $8687.29[;]" (4) had approximately $7,725.94 in checking and savings accounts in late April 2016, during the prior year Plaintiff maintained an average monthly amount of $14,528.00 in these accounts-with a high of $19,205.15 in December 2015, and the April 2016 amount of $7,725.94 representing the lowest cash balance for the prior year period; (5) "engaged in a complicated lease to own arrangement with respect to his home ["the home"] in which [Plaintiff] was able to divest large sums of retirement savings and place any interest in the property obtained in the name of another[:]" specifically, Plaintiff and his current wife, respectively, contributed $70,000.00 and $35,000.00 toward the purchase of the home on 18 December 2014, Plaintiff's then employer, Frontline, financed the purchase of the home, and the home was titled in the name of Frontline, the "contract price was $290,161.00 plus $35,798.18 settlement charges to the borrower which primarily consisted of a pool to be built after the closing[,]" Plaintiff and his wife executed "a Lease Agreement with option to purchase" with Frontline, and Plaintiff and his wife "executed a promissory note to [Frontline] in the principal sum of $321,932.64 on 12/18/2014[;]" (6) "has retained significant assets in the form of retirement savings which will make it difficult for [D]efendant to collect a money judgment[;]" (7) and "[i]n light of [P]laintiff's maintenance of a large checking account balance he has the ability to comply with an order for the payment of [D]efendant's attorney's fees."
 

 We hold that the remand order contains sufficient findings of fact to support the order of specific performance of Defendant's attorney's fees in the amount of $10,905.00. This argument is without merit.
 

 F.
 
 Motions to Reopen Case and for Relief from Order
 

 Plaintiff argues the trial court abused its discretion by denying his motion to reopen the case in light of relevant new evidence, and by
 
 *49
 
 denying his Rule 60(b) motion for relief from the 14 June 2016 order. We hold the trial court did not abuse its discretion.
 

 The trial court's ruling on Plaintiff's motion to reopen can only be overturned upon a clear abuse of discretion.
 
 Maness v. Bullins
 
 ,
 
 33 N.C. App. 208
 
 , 211,
 
 234 S.E.2d 465
 
 , 468 (1977). The same is true concerning the trial court's denial of Plaintiff's Rule 60(b) motion for relief.
 
 Wallis v. Cambron
 
 ,
 
 194 N.C. App. 190
 
 , 194,
 
 670 S.E.2d 239
 
 , 242 (2008) (citations omitted) ("a trial court's decision to grant or deny relief pursuant to Rule 60(b) will not be overturned absent an abuse of discretion").
 

 Plaintiff filed a motion on 26 May 2016 to reopen the case following the 10 and 11 May 2016 hearing on remand. In Plaintiff's motion, he argued:
 

 2. The hearing of this action began on May 10, 2016 and testimony concluded on May 11, 2016, with both parties resting.
 

 3. [ ] Plaintiff at the time of the hearing was employed with [Frontline] as Vice President of Sales earning $135,000 annually.
 

 4. That on May 23, 2016 Plaintiff's employment with [Frontline] ended; and that as of the filing of this motion Plaintiff is unemployed.
 

 5. The [trial court] has not yet entered a ruling upon the matters and issues before [it].
 

 6. The hearing of this additional testimony would not in any way prejudice [ ] Defendant's contentions in this action.
 

 *314
 
 7. That Plaintiff through this motion attempts to make [ ] Defendant and the [trial court] aware of his substantial change in circumstances.
 

 As noted in Plaintiff's motion, at the time Plaintiff filed his motion the trial court had not yet entered its order on remand in the matter, which it first entered on 14 June 2016.
 
 [7]
 

 Plaintiff filed a motion for relief from the 14 June 2016 order on 20 June 2016, arguing that "the filing of Plaintiff's motion to allow
 
 *50
 
 additional testimony regarding termination of employment prior to the entry of the [14 June 2016] order in this matter and [ ] Plaintiff's loss of employment since the trial in this matter justify relief from the order entered June 14, 2016 pursuant to Rule 60(b)(6)." The trial court did not hear Plaintiff's motion to reopen until 11 July 2016, nearly a month after entering the remand order, and it denied Plaintiff's motion by order entered 13 July 2016. The trial court simultaneously heard Plaintiff's motion for relief from the 14 June 2016 order on 11 July 2016 and denied it in its 13 July 2016 order.
 

 In its 13 July 2016 order, the trial court noted this Court's language from
 
 Lasecki I
 
 regarding the trial court's denial of Plaintiff's 23 July 2014 motion to reopen following the July 2014 hearing. In
 
 Lasecki I
 
 , this Court stated:
 

 We also note that on or about 21 July 2014, only three days after the close of the 17 and 18 July 2014 hearing, Frontline extended an offer to [P]laintiff to work as a salesman in Arizona, and [P]laintiff immediately accepted. The salary in Frontline's offer was one percent of all of [P]laintiff's sales, with a yearly guaranteed draw of $110,000.00. The trial court had taken the case under advisement at the close of the hearing on 18 July 2014 and had not yet announced a ruling. On 23 July 2014, [P]laintiff moved to reopen the case to allow testimony regarding this new employment and income, and although the trial court had still not entered an order, on 14 August 2014, the trial court denied plaintiff's motion. On 28 August 2014, the trial court entered the order which is on appeal, and on 3 September 2014, [P]laintiff moved for a new trial, again seeking to present evidence of [P]laintiff's actual income in his new job; the trial court denied this motion as well. Although [P]laintiff did not appeal from the orders on the post-trial motions and has not challenged them on appeal, we cannot help but note that if the trial court had allowed the evidence of [P]laintiff's actual income in his new job to be presented and considered, most of the issues addressed by this appeal would have been eliminated and there would have been no need for remand on those issues. Plaintiff accepted the new job only days after the hearing and even before the trial court had announced its rulings, and with newly available income information, the order could have been based upon [P]laintiff's actual income. We would also
 
 *51
 
 imagine that [P]laintiff's move to Arizona to begin the new employment would affect his visitation schedule with the children and travel costs associated with visitation, which are additional factors the trial court may need to consider when addressing the child support issue.
 

 Lasecki I
 
 , --- N.C. App. at ----,
 
 786 S.E.2d at 300
 
 .
 

 The trial court explained in its 13 July 2016 order its decision to deny Plaintiff's motions in part as follows:
 

 22. On the date the [trial] court filed its order pursuant to the hearings on 5/10/16 and 5/11/16, the [trial] court was aware of the pleadings in the file at the time the order was filed. By filing the order, the [trial] court did not intend to deprive "[P]laintiff of the opportunity to have a meaningful hearing on his pending motion to reopen" as alleged in [Plaintiff's] motion for relief. The [trial] court merely intended to attempt to continue to comply with its obligation under the code of judicial conduct to dispose promptly of the business of the court.
 

 *315
 
 23. Herein, the [trial] court will consider [P]laintiff's motions separately and in the sequence in which they were filed now that [P]laintiff has had the opportunity to present evidence upon his motions and to argue them. This court will consider [P]laintiff's first motion without regard to the filing of the 6/14/2016 order.
 

 ....
 

 25. On July 7, 2016 [P]laintiff filed an affidavit with the [trial] court indicating that his only source of income was from his current employer as an Uber Driver from which he had earned just over $2,500.00 in 43 days. Counsel for [D]efendant objected to the [trial] court considering the affidavit for the reason that she was unable to cross examine [P]laintiff regarding his assertions. Plaintiff's assertions are not particularly detailed indicating only that his unemployment has ended, been lost, or terminated without stating in his pleadings particular reasons for his alleged change in circumstances. The [trial] court will give this affidavit the same weight as [P]laintiff's verified motion to re-open the case. The [trial] court will consider it only as an assertion by [P]laintiff as grounds upon which he is making an application for relief.
 

 *52
 
 26. For more than 200 years the North Carolina Supreme Court has indicated that allowing additional evidence after closing arguments is within the discretion of the trial court. The Supreme Court notes that it is a departure from the normal rules of procedure which ought not be done except for good reasons shown to the [trial] court. [Citations omitted].
 

 27. In exercising its discretion in considering [P]laintiff's motion to reopen the case to allow additional testimony, this court has weighed several factors. Allowing [P]laintiff's motion may allow the [trial] court to fashion an order based upon facts existing at a time nearer to the filing of the written order; however, in light of the work load of the Civil District Court in Iredell County, it would be difficult for a trial judge to be able to digest the testimony and exhibits regularly presented by these parties; decide the complicated issues raised by the pleadings considering the guidelines, statutory mandates, and case law presumptions; and dictate a decision in less time that [P]laintiff has twice asserted a desire to reopen his evidence: 5 days after a two day trial in 2014 and 14 days after a two day trial in 2016.
 
 [8]
 
 This court appreciates the Court of Appeals of North Carolina noting in this very case that if the [trial] court had allowed a similar motion of [P]laintiff in 2014 that most of the issues addressed in his prior appeal would have been eliminated. However, the current motion is not an invitation to avoid legal error in imputing income when actual income is available, but rather a request that the [trial] court consider assertions regarding actual income at a time 14 days after the close of the evidence and arguments rather than the evidence of actual income offered during the two day trial in which the parties indicated that they were ready to proceed and presented evidence and critically questioned the evidence of the other party.
 

 *53
 
 Plaintiff's motion is not a request to produce evidence that actually existed at the time of the hearing which [P]laintiff merely wishes to introduce to correct some technical defect in his case; but it is a request to introduce additional evidence which could substantially change the complexion of the case which did not even exist until 12 days after the conclusion of a trial. The general rules used in trials have been developed to secure fairness, eliminate unjustifiable expense and delay, and to seek the truth. These purposes can be found in N.C.G.S. § 8C-[1, Rule] 102(a),
 
 [9]
 

 *316
 
 Rule 1 of the General Rules of Practice for the Superior and District Courts, and the 1813 decision of the North Carolina Supreme Court cited above.
 
 [10]
 
 Although denying [P]laintiff's motion may trigger an appeal, or motions to modify, or actions to enforce an order entered without the benefit of [P]laintiff's new evidence; the granting of his motion will certainly create expense for the parties and delay in the resolution of the issues before the [trial] court. Furthermore, additional hearings would not guarantee that the trial court would reach a better decision or that the party perceiving defeat would not seek the remedy of an appeal. After considering carefully [P]laintiff's motion the [trial] court fails to find good cause to allow additional evidence to be presented after both parties have rested and argued their cases.
 

 28. The [trial] court now considers [P]laintiff's motion for relief from the [trial] court's judgment. .... Plaintiff's counsel has indicated that a ruling in favor of [P]laintiff may avert an appeal. Appeals delay the prompt determination of the business before the courts, are costly to the litigants, and place at risk the finality of judgments. Plaintiff's counsel also asserts that denying his motion will place an inappropriate impediment on his right to appeal by forcing him to choose between appealing or avoiding an appeal in
 
 *54
 
 hopes of winning a motion to modify the judgment based upon a change in circumstances. [This] court puts little weight on this assertion. Legal decisions are often based upon complicated analysis of risk and return. Although the failure of a court to exercise a discretionary equitable power of relief may complicate the future decisions of a litigant, that complication is not improper or inappropriate. Plaintiff also argues that allowing his motion may avoid future hearings regarding the collection of the sums mandated by the 6/14/2016 order. Facts and circumstances may or may not align to prove his assertion. On the other hand allowing [P]laintiff's motion will interfere with the finality of the trial court's judgment and cause certain and immediate hardship to [D]efendant. She will have to continue to retain counsel and prepare for and participate in yet another session in a trial on the merits regarding claims filed nearly three years ago.
 

 The trial court then concluded that Plaintiff "failed to show good cause to allow his motion to re-open the case[,]" and "failed to show extraordinary circumstances and failed to show that justice demands that relief be granted pursuant to N.C.G.S. § 1A-1, Rule 60, and his motion [for relief from the 14 June 2016 order] should be denied."
 

 We recognize the difficulties inherent in cases such as the present case, in which a substantial change in circumstances may occur at any time. However, "we cannot help but note that if the trial court had allowed the evidence of [P]laintiff's actual income in his new job to be presented and considered, [many] of the issues addressed by this appeal" might have become moot.
 
 Lasecki I
 
 , --- N.C. App. at ----,
 
 786 S.E.2d at 300
 
 . At a minimum, this Court would not have been required to go through the process of deciding issues based upon relevant facts that were no longer accurate at the time notice of appeal was filed. We agree with the trial court that "[a]llowing [P]laintiff's motion may [have] allow[ed] the [trial] court to fashion an order based upon facts existing at a time nearer to the filing of the written order[,]" and add that by so doing, the trial court's order would have more likely reflected the current financial situation of the parties, and our opinion would more likely address issues and facts that had not lost much of their relevance.
 

 Nonetheless, the trial court discussed its decision to deny Plaintiff's motions in some detail. In particular, the trial court found that Plaintiff's affidavit in support of his motion to reopen provided scant information concerning the conditions surrounding Plaintiff's loss
 
 *55
 
 of employment and, therefore, the trial court was not provided with information
 
 *317
 
 relevant to its discretionary decision. In light of the great discretion afforded the trial court in deciding whether to reopen the evidence in a case, Plaintiff's minimal effort in providing information relevant to the trial court's decision, and the trial court's thorough explanation of its decision, we cannot find that the decision to deny Plaintiff's motion to reopen the case was " 'manifestly unsupported by reason and so arbitrary that [it] could not have been the result of a reasoned decision.' "
 
 Maldjian v. Bloomquist
 
 , --- N.C. App. ----, ----,
 
 782 S.E.2d 80
 
 , 83-84 (2016) (citations omitted). With regard to the trial court's denial of Plaintiff's Rule 60(b) motion, we similarly hold that Plaintiff has failed to meet his burden of showing the trial court abused its discretion.
 
 In re L.C.
 
 ,
 
 174 N.C. App. 622
 
 , 623,
 
 621 S.E.2d 208
 
 , 209 (2005).
 

 AFFIRMED.
 

 Judges TYSON and INMAN concur.
 

 [1]
 

 By "current" we mean at the time of the relevant hearing.
 

 [2]
 

 Plaintiff had no difficulty recognizing this difference in his brief submitted for
 
 Lasecki I
 
 , where he argued: "The trial court committed reversible error by granting [ ] Defendant a judgment for unpaid alimony and child support ... where Defendant did not request a judgment and a judgment is not a remedy available for specific performance, the only counterclaims made by Defendant."
 

 [3]
 

 It is clear that the child support and alimony arrearages in
 
 Lasecki I
 
 were ordered paid as money judgments and not through specific performance. It is equally clear that Plaintiff was aware of this distinction, and that specific performance did not apply to the award of the child support and alimony arrearages.
 
 Lasecki I
 
 , --- N.C. App. at ----,
 
 786 S.E.2d at 290-91
 
 (citations omitted) ("[D]efendant specifically requested in her counterclaims that [P]laintiff pay the child support and alimony arrearages[.] Although [Defendant] requested an order for specific performance, she also requested 'such other and further relief as to the court may seem just, fit and proper.' In addition, at the hearing, [D]efendant's counsel cross-examined [P]laintiff specifically on the issues of the child support and alimony arrearages and the unpaid amount owed on the joint credit card. By awarding these unpaid amounts as money judgments, the trial court did not grant relief which 'was not suggested or illuminated by the pleadings nor justified by the evidence adduced at trial.' N.C. Gen. Stat. § 1A-1, Rule 54(c) (2013) ('Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.'). Accordingly, we hold that the trial court did not err in awarding these unpaid amounts as money judgments.").
 

 [4]
 

 We further take judicial notice that Plaintiff appealed an additional order for contempt entered in this matter on 13 December 2016. That appeal was recently decided by this Court in a separate unpublished opinion filed 17 October 2017.
 
 Lasecki v. Lasecki
 
 , --- N.C. App. ---,
 
 805 S.E.2d 566
 
 ,
 
 2017 WL 4638209
 
 (2017).
 

 [5]
 

 Plaintiff argues in his brief that he overpaid twelve months, from 1 July 2015 until entry of the remand order on 14 June 2016, and that his total overpayment amounted to $14,544.00. However, the remand hearing concluded on 11 May 2016, so the trial court had no evidence to consider concerning the period between 11 May 2016 and entry of its order on 14 June 2016. As there is no record evidence of any payments after 11 May 2016, we are limited to the record evidence before us. During the appropriate time period-1 July 2015 until 11 May 2016-Plaintiff would have "overpaid" child support in the amount of $12,120.00.
 

 [6]
 

 Had the trial court not given Plaintiff credit for overpayment of child support between 1 July 2015 and 1 April 2016, the trial court would have found Plaintiff's child support obligation to have been $29,000.00, instead of $16,880.00, for that period. It was the reduced obligation of $16,880.00 that was used to establish $46,480.71 as the damages resultant from Plaintiff's breach.
 

 [7]
 

 The trial court then entered an amended order on remand 13 July 2016,
 
 nunc pro tunc
 
 14 June 2016.
 

 [8]
 

 Although the meaning of this sentence is not entirely clear, we understand it to mean either that it would have been difficult for the trial court to have entered its orders prior to the dates upon which Plaintiff filed his 2014 and 2016 motions to reopen the case, or simply that allowing Plaintiff's motions to reopen the case would have caused delay more detrimental to the efficiency of the judicial process than denial of these motions in fact caused. We appreciate the need for maximum efficiency at the trial court level, but stress that ultimately it is the efficiency of the entire process that should be paramount.
 

 [9]
 

 It is unclear that denial of Plaintiff's motions to reopen in the present case have served "to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." N.C. Gen. Stat. 8C-1, 102(a) (2017).
 

 [10]
 

 Par. v. Fite
 
 ,
 
 6 N.C. 258
 
 , 259 (1813).